May 29, 2018

U.S. District Court Illinois
Northern District of Illinois
Chicago, IL

**1:18-cv-03742**
**Judge Elaine E. Bucklo**
**Magistrate Judge Daniel G. Martin**

Arlene R. Atherton
(plaintiff)

**RECEIVED**

MAY 29 2018

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

Case Number
COMPLAINT

Do You Want A Jury Trial?

Yes ___ No ___

against.

New York City Police Department; Weil Cornell Hospital; NY Presbyterian White Plains Hospital; Attending Physician; ~~Westchester County New York Supreme Court, Hon. J. Emmett Murphy,~~ Westchester County Government, New York ~~State Office of Mental Health~~. (Defendants).

NOTE TO UNITED STATES DISTRICT COURT - Ms. Atherton advises the Court that due to Cyberstalking, Cybercrime Assaults she is unable to include 'legal authorities' in her Complaint. A Cyberstalking Emergency Protection Order has been requested 3/8/2018. Said activity has impacted the access to law library e-resources, WIFI or Internet access law review sites and citation, Google, and Illinois Court Cyberstalking petition disrupted on public kiosks targeted via device serial number. Clone sites of disreputable Illinois law have been superimposed on domain pointers or traffic routers. This is a LEGAL ASSUALT to prevent Ms. Atherton's due process and access to United States Court System. Ms. Atherton draws the United States District Court's attention to the fact the Personal Protection Order (PPO) for Riley Shane Keller was denied in Circuit Court of Cook County – regarding Cyberstalking. Remote Desktop Viewing has increased to invasion of the prime document – and alteration of text to prevent Ms. Atherton from due process and filing. WIFI at Hyatt hotel has been disabled to prevent citations, authorities, and reference material to the key document. This is a landmark case for Traumatic Brain Injury and law authorities are not protecting Ms. Atherton to complete her legal duties.

FORMATTING, TYPE, ORDER, and FOOTNOTES AFFECTED BY CYBERSTALKERS 2/14/2018 – from 10:00PM to present continuously. Plaintiff cannot validate all text is accurate as there is continuous alteration of this document. ALL FAMILY MEMBERS ON WITNESS LIST – See Washington D.C. District Attorney – Family Abuse and Neglect filing 1/6/2018.

1. **Timely Filing** - Complaint against the New York CIty Police Department; Weil Cornell Hospital[1]; NY Presbyterian White Plains Hospital; Attending Physician; Other doctor; Westchester County New York Supreme Court, Hon. J. Emmett Murphy, Westchester County Government, New York State Office of Mental Health. Weill Cornell Hospital and NY Presbyterian White Plains Hospital, 'commitment periods' 12/9/2015 to 2/2/2016 - 56 day. Ms. Atherton requests the consideration of the United States District Court to support the exercise of her Civil Legal Rights to due process. Ms. Atherton outlines events that have deprived Ms. Atherton of her personal liberty and the execution of her legal rights. The circumstances meet the 'good cause' for delay and are classified as LEGAL ASSUALTS to prevent Ms. Atherton's access to the Court guaranteed to all citizens of the United States of America of America, due process for loss of life, liberty, property or redress for harm and personal injury under Constitutional law of the 14th Amendment.

These LEGAL ASSUALTS are designed to prevent Plaintiff from filing in her home jurisdiction, destroy evidence, or alter and destroy legal documents. Ms. Atherton has filed a 8 protection orders for the Cyberstalking in order to secure her evidence, note witnesses, and prevent legal tampering. ALL LEGAL ASSUALTS have taken place since Ms. Atherton began fighting against the parties in this Complaint in 2015. Ms. Atherton states that this Complaint over 'loss of personal liberty' guaranteed under the 1st Amendment of the Constitution, follows a continuous serious of criminal incidents serially related and cumulative. The allegations in this Complaint span State Facilities, individual

**Atherton 'Liberty' Complaint in New York State**

actors, and local government; they cannot be separated as all the actors are intertwined and the commitment periods are causative of the forced custody.

The LEGAL ASSUALTS take four forms:

1) 'forced commitment' to a mental hospital – discriminating against Americans with Disabilities Act 1990. This is a technique to prevent Court Access, Complaint filing, Testimony, evidence submission, or witness verification of Claims in a desired Legal Complaint.

2) 'false arrest' presuming 'trespassing' desired to interrupt Plaintiffs travel, access to law libraries, legal resources, law firms, or remain in a geographic area.

3) Interruption to access of e-legal resources, e-citations, e-authorities due to Cyberstalking of a case using material from events in this Complaint: impacting a recovery of real property damage in excess of 1 million dollars lost to foreclosure related while volunteering for the United States of America of America of America; submitted to Congress. The

4) Interruption to Plaintiff banking access for funds to travel to required destinations – attempting to take advantage of Plaintiff economic limitation stranding Plaintiff outside the Jurisdiction of Residence.

1) LEGAL ASSUALTS - Calculation of period for inability to exercise legal rights 'false commitment': Ms. Atherton was 'falsely committed' as a result of SWVMHI on the following periods: 1) New Mexico UNM Hospital 9/12/2016 to 10/7/2016- 27 days; 2) Chicago, Il 2/26/207 to 3/24/2017 - 26 days – 3) Troy, NY 6/9/2017 to 6/10/2017 – 29 days; 4) Hartford, CT a) 9/14/2017 to 9/17/2017,9/20/20 – 3 days; b) 9/20/2017 142 days Ms. Atherton could not exercise her civil and legal rights. New Statue date 6/6/2018.

2) LEGAL ASSUALTS - Calculation of period for inability to exercise legal rights, 'false arrest':
Ms. Atherton has endured the FALSE ARREST by America's finest in the process of being taken advantage in a legal claim. – ALL FALSE ARRESTS have been DISMISSED of any Criminal Charges. Each FALSE ARREST is discrimination in Traumatic Brain Injury attempting to keep Ms. Atherton from law libraries, legal resources, or transit to an area or jurisdiction where she can file legal documents.

   - 1/29/2016 – New York, NY – Columbia University – "Trespassing" charge for attempt to use Law Library.
   - 4/15/2016 – Albuquerque, NM – attempt to steal evidence for FEDERAL CASE with failed 'trespassing
   - charge'.
   - 5/2/2016 – Palo Alto, CA – "Trespassing' Charge Stanford Campus for attempt to use Law Library.- Persky Court failed to release Ms. Atherton until 7/12/2016. Judge Persky lost his bench in criminal court due to his failure to sentence Brock Turner beyond the minimum of 1st degree Aggravated RAPE on Stanford Campus. – 72 days of delayed search for representation for S.D.N. Y. FEDERAL CASE.
   - 9/5/2016 – Albuquerque, NM – Ms. Atherton arrested for 'trespassing' in Hotel after calling in her Bank Card stolen from 2ⁿᵈ District Court security guard. – 7 days.
   - 9/17/2017 – Hartford, CT – Hartford Police called on 'trespassing 911 call – did not arrest in Hartford to file Protection Order.
   - 1/8/2018 – Washington, DC – "Trespassing charge " WHITEHOUSE – for submitting Temporary Restraining Order to Security Guard.
   - 3/10/2018 – Chicago, IL – Attempted "Trespassing charge" DePaul University Law Library – FALSE INTERSESSION – attempt to remove Ms. Atherton at 7:00PM, when single paper notice reads expiration 6:00PM. NO arrest.
   - 3/15/2018 – Chicago, IL – Attempted "Trespassing charge" at Hilton Airport for attempting to send a FAX at UPS.

3) LEGAL ASSUALTS - Calculation of period for inability to exercise legal rights: Restraining Orders Protection Orders filing for E-surveillance
   1) 8/22/2017 - Cook County, IL – Emergency Protection Order – Circuit Court - Cyberstalking – Interstate Cyberstalking

2

2) 9/2/2017 Wayne County, MI – Temporary Restraining Order – Younger Court House - Cyberstalking – Interstate Cyberstalking
3) 9/15/2017 & 9/20/2017 - Hartford, CT – Temporary Restraining Order – Superior Court – Cyberstalking – Interstate Cyberstalking
4) 1/8/2018 - Washington D.C. – Temporary Restraining Order – Superior Court – Cyberstalking – Predatory Stalking
5) 3/8/2018 -  Cook County, IL -  Emergency Protection Order – Circuit Court – Cyberstalking – Interstate Stalking – Predatory Stalking. Summons due 8/20/2018.

4)  Interruption to Plaintiff banking access for funds to travel to required destinations.
8/22/2017 Plaintiff requests Emergency Protection Order. Ms. Atherton's Bank card was stolen from UPS – with validation of Chase Bank signature for delivery. Ms. Atherton was told she had to obtain the card at the location the account was opened in New York City without mailing it.
9/15/2017 Plaintiff requests Emergency Protective Order. Ms. Atherton sought access to alternate banking services – Ms. Atherton experienced Banking Fraud with the failure of the Institution to deliver said card to customer with the account.
12/1/2017 Plaintiff requests Logisticare to transport her to Chicago for medical appointment for Traumatic Brain Injury Care at Shirley Ryan 12/6/2017  With faxed copy for said request. Logisticare failed to transport Ms. Atherton.
1/15/2017 Ms. Atherton was enroute to Chicago for FEDERAL FILING when her debit/credit card is disabled and routing transportation is unavailable.
Incidents financially strangle Plaintiff's ability to reach Jurisdiction, Legal Resources, or Secure Evidence.

STATUE of LIMITATIONS CONSIDERATIONS:  Revised minimum Statue of Limitations date based on forced commitment alone is 6/6/2018.

**2. Material Issue**: All issues cited in this Federal Case are causative of these defendants, cumulative from inception; responsible for current damages; Impacting Ms. Atherton's life well past the date of the incident. Hence the injury and harm has been pervasive, enduring, and current to today's relevant requirements. The continued 'framing of mental illness' impacts Ms. Atherton, and the medical malpractice continues to manifest injuries to Ms. Atherton.

FEDERAL QUESTIONS:
a) CIVIL RIGHTS - Disability Discrimination: Americans with Disabilities Act 1990 U.S.C. 42-12101has been violated.
b) CIVIL RIGHTS - Freedom of Religion: Constitutional  1st Amendment Right  -Discrimination and interference with religious practice.
c) CIVIL RIGHTS - Personal Liberty - False incarceration: 14th Life, Liberty, or Property cannot be taken without due process.
d) CIVIL RIGHTS - Right to obtain correct MEDICAL CARE – Consumer Protection in Medical Care against Malpractice. Federal Rehabilitation Act of 1973 29 U.S.C. § 701
e) CIVIL RIGHTS – Right to FAIR HOUSING with a Disability - Fair Housing Act 42-3601
f) CIVIL RIGHTS – Right to INDEPENDENT LIVING – with a Disability U.S.C. Title 29 § 51.5-162.  ARTICLE 10 - Independent living services
g) CIVIL RIGHTS – Right to Due Process, Right to Legal Redress of  Injuries,  14th Amendment Right for Due Process. Exercise of Legal Rights have been attacked, interrupted, and delayed due to the issues raised in this Complain. Subsequent LEGAL ASSUALTS include Cyberstalking, Cybercrime, WIFI access, Desktop Remote Access (See attached 3/8/2018 Cook County Emergency Order of Protection, 3/20/2018 Motion for Hearing).
h) Right to Medical Care - across all 50 states.
i) New York State Patient Bill Of Rights with their 'mental health' protection.

**3. Jurisdiction:** U.S. District Court – Northern  District of Illinois
Federal Question – venue based on Original Jurisdiction, Ms. Atherton's as a resident in Cook County prevails to all parties - Please see the List of Parties Plaintiff/Defendants

3

**Atherton 'Liberty' Complaint in New York State**

Plaintiff address: Chicago, Il 60602 and has the right to bring the complaint in the Jurisdiction of her current Residence. Original Filing prevails in venue of the United States District Court.

Defendants: Have various addresses in the State of New York - see attached list "Parties to the Complaint".

4. Statement of Claim

| Place of Occurrence | Date of Occurrence | Description |
|---|---|---|
| New York City, NY | 12/9/2015 | Safety Check - New York City Police Department |
| New York City, NY | 12/9/2015 | Weil Cornell Hospital- Admission: |
| White Plains, NY | 12/12/2015 | NY Presbyterian White Plains Hospital - Admission |

**5. Facts Overview of Case** - Events: On 12/9/2015 Ms. Atherton had just filed Personal Protection Petition Order Friday in downtown Manhattan NYC. Ms. Atherton got off the 3rd ave bus at Au Bon Pain and entered as a patron near 55th street. She passed by the other patrons entering the door. She was then outside after the store closed. She was stopped by a NYC Police officer who claimed that she was 'violent' and injured a person by 'hitting them'. This was a strong recollection by Ms. Atherton of SWVMHI who stated Ms. Atherton was unfit to live alone as she might be accosted by someone and falsely accused of assault. That is what was taking place here. The NYC Police officer claimed he didn't care if he lost his badge, he was calling the EMT and having Ms. Ahterton taken in. She was taken to Weil Cornell ER Psych ward and then trans ported to NY Presbeterian Hospital in White Plains, NY - a subsidiary of Weil Cornell Hospital.

At NY Presbyterian White Plains Hospital initially her doctor prescribed Haldol for Ms. Atherton.
Regardless of Ms. Atherton's protest that the 'said person whom she "hit" was not named by the police, found by the police, or identified in the dispatach report Ms. Atherton was treated as a danger to others.

Attending Physician forced a 'medication over objection' with Ms. Ahterton at WESTCHESTER COUNTY Mental Health Court. She was forced to appear on a 'gurney' in restraints or she was not allowed to go to Court. Ms. Atherton was humiliated and demeaned before she ever opened her mouth by this type of treatment. Ms. Atherotn' offered to WALK to the Court which was denied. The WESTCHESTER COUNTY COURT did not accept Ms. Atherotn's statement that she did not 'hit' anyone and was falsely accused. Ms. Atherotn explained to the Judge and to the court that this was 3rd party stalking used to obtain a 'mental health disagnosis', the very reason she went to Court to obtain a Protection Order.

Causative Damage from Weil Cornell Hospital and its subsidiary NY Presbyterian White Plains Hospital is this detention is being used by Donavon Roberts and RILEY SHANE KELLER of JOINT DEFENSE TEAM to attempt to profile Ms. Atherton as suffering from serious 'mental diseases'. The profiling of Ms. Atherton to prevent 'testimony' in the original Traumatic Brain Injury assault. There are no 'medical diseases' – there are chemical imbalance, failures in biological function, and tissue damage. This is a mischaracterization by Donavon Roberts and Riley Shane Keller, who lack understanding of 'neurological function' relying on Weill Cornell Hospital/NY Presbyterian White Plains Hospital records.

Ms. Atherton presented her argument to the Westchester County New York Supreme Court for 'Medication Over Objection': 1) She was not prescribed any 'psychotropic drugs' for 'psychosis' while residing in Virginia; 2) Ms. Atherton's religious beliefs in Scientology and the 'auditing process'. The 'auditing process' prohibits the use of pharmaceuticals and psychotropic drugs to perform the auditing 'ritual' and training; 3) Ms. Atherton's life long conduct of taking 'no prescription' medication using alternative medicine; 4) Ms. Atherton was NOT a DANGER to SELF – she was taking care of an Insurance Claim from a near fatal auto-accident; 5) Ms. Atherton was not a DANGER to OTHERS – she was acting as an ordinary consumer

Ms. Atherton would like to know – what 'break in reality' for a 'paranoid schizophrenic' diagnosis is the NY Presbyterian Hospital citing that makes her a required 'mental illness patient' in need of 'residential care' at the expense of the U.S. Government?

Ms. Atherton received the Westchester County New York Supreme Court decision to force the NY Presbyterian White Plains Hospital 'commitment' and commence 'Court Ordered Medication' with 50mg. 'Haldol'. This drug is contraindicated in Traumatic Brain Injury rehabilitation, bathing the neurons and synapses in chemicals preventing the normal healing of neuroplasticity. With full knowledge of these facts. Attending Physician prescribed, authorized, and administered Haldol – a drug that could cause 'medical death' to Ms. Atherton. Haloperidol Contraindications – News Medical www.news-medical.net/health/Haloperidol-Contraindications.aspx

6) Claims (review these claims)

6.1 NY Criminal Action -Forced Relocation (Abduction) of Ms. Atherton from New York CIty.
6.2 NY- Discrimination based on TBI Disability, Gender, and Age

6.3 NY Defamation - Labeling Ms. Atherton as permanently long term 'mentally ill'- impacting her ability to regain a place in society, employment, professional opportunities, financial recovery.

6.4 NY Mental Health Services Requirement -Weil Cornell Hospital violated Ms. Atherton's New York State TBI Disability Rights placing her in the White Plains Westchester County Mental Health System which does not treat 'traumatic brain injury services'.

6.5 Weil Cornell Hospital violated Ms. Atherton's New York Disabilities Rights when they referred Ms. Atherton to an affiliate - NY Presbyterian White Plains Hospital who treated Ms. Atherton like a person unable to overcome her TBI Disability – seeking to profit from residential 'in patient' mental health treatment.

6.6. NY Presbyterian White Plains Hospital violated Ms. Atherton's TBI Disability Rights when they accepted Ms. Atherton for mental health treatment – what is the 'break in reality' being a consumer; what is the 'break in reality' for being 'alone'.

6.7 Weil Cornell Hospital failed to meet "medical necessity' criteria of MEDICAID to recommend admission of Ms. Atherton to an in-patient acute Psychiatric Hospital. There was no emergency, life saving action, and there were many alternatives in the community, which rendered appropriate TBI Care. – this is Malpractice.

6.8 NY Presbyterian White Plains Hospital failed to meet "medical necessity' criteria of MEDICAID to admitting Ms. Atherton to an in-patient acute Psychiatric Hospital. There was no emergency, life saving action, and there were many alternatives in the community, which rendered appropriate TBI Care. This is Malpractice.

6.9 NY Presbyterian White Plains Hospital Medical Admission and Mental Health Treatments did not meet New York State law for TBI Disabled Persons. Failure to follow New York State Health Code.

6.10 NY Presbyterian White Plains Hospital Discharge allowed for "homeless" option. The ongoing 'safe discharge' was to "housing' disregarding Ms. Atherton's life in New York City this was not accepted.

6.11 NY Presbyterian White Plains Hospital violated Ms. Atherton's rights as 'informed consent' in administering medical treatment for Mental Health Services. A Mental Health Patient is allowed to refuse treatment. A "forced commitment", still allows Ms. Atherton to 'refuse treatment'.

6.12 NY Presbyterian White Plains Hospital - False Diagnosis - TBI Disability leads the survivor to prefer quiet places – there was nothing abnormal about Ms. Atherton's circumstance. NY Presebyterian Hospital classified Ms. Atherton as 'mentally ill', with 'behavior problems" violating the medical treatment necessary for a TBI person.

**Atherton 'Liberty' Complaint in New York State**

6.13. Damages caused by NY Presbyterian White Plains Hospital, NY.

6.14 Freedom of Religion - refusal of mental health treatment on Freedom of Religious Practice Grounds was disregarded.

6.15 Medical Torture - using medical techniques that are not standard for TBI Rehabilitation – inhibiting the TBI healing process.

6.16 Medical Malpractice - NY Presbyterian White Plains Hospital using "mental illness techniques' to treat TBI Disability, administering drugs that are contra-indicated.

6.17 NY Presbyterian White Plains Hospital engaged in Abuse of Ms. Atherton during Treatment Period, through use of 'chemical restraint', and 'forced drugging".

6.18 Ms. Atherton was not a DANGER to SELF nor a DANGER to OTHERS – hence holding Ms. Atherton in a Mental Health Facility as a 'dangerous person' is false.

6.19 NY Presbyterian White Plains Hospital colluded with Donavon Roberts and JOINT DEFENSE TEAM under RILEY SHANE KELLER to make Ms. Atherton appear 'mentally ill' rather than Traumatic Brain Injured to settle the 1/7/2011 Auto Accident Case. Ms. Atherton foiled both attempts by getting a neurological evaluation 3/2015 before NY Presbyterian White Plains Hospital discharge - showing NO MENTAL ILLNESS.

7.0 Injuries -
Ms. Atherton suffered physical, emotional, psychological, financial, and social reputation damage.

Ms. Atherton has had a delayed Traumatic Brain Injury recovery. Without experts to guide her she was slow to recover memory issues. She has trouble coordinating tasks, and organizing events, and actions. Ms. Atherton is very slow to execute, she gets mixed up/confused easily, and cannot take multiple forms of stimuli, which detract her focus and concentration. She has difficulty with geo-location. The malpractice in Weill Cornell Hosptial/NY Presbyterian White Plains Hospital destroyed emerging nuclei and neurons and synapse as her brain was beginning to heal. These chemicals destroy this new emergence of brain cells, the development of nuclide, and formation of neurons; placing Ms. Atherton back to the point of injury. Ms. Atherton has lost 25 IQ points from pre-injury to present. Much of the growth could have taken place with correct stimulation and reinforcement had Ms. Atherton gotten to a Traumatic Brain Injury rehab center.

Ms. Atherton suffers emotionally, with nightmares that remain regarding the treatment received at the hands of Weill Cornell Hospital/NY Presbyterian White Plains Hospital. The combination of the population of other' mentally ill persons' the horrific treatment from the Westchester County New York Supreme Court, the disregard of her religious beliefs, the knowledge that her Brain was being attacked by 'medication' and forced into 'physical and chemical restraints' are unforgettable. She cries when she recalls the social limitations forced upon her to co-habitat with drug addicted persons, persons forced into the same LABEL as 'mentally ill' and the truly 'mentally ill'. Ms. Atherton was struggling to make sense of things as a Traumatic Brain Injured survivor, the added consequence of persons who cannot conduct themselves with civility and compassion is grievous to Ms. Atherton. The constant accusation by Staff about her conduct and statement entering misinformation in medical notes was clear Ms. Atherton's reputation would be forever damaged. Ms. Atherton is no longer is able to 'cry' as she fears a 'concerned citizen' will call Emergency Medical Treatment Team and force her to a Temporary Detaining Order - with a "mental health' record from past 'long term commitment' she is held against her will and 'forcibly committed' for further observation.

Ms. Atherton's economic recovery and re-entry back into a contributing member of society has been stalled as she has been taken 'off line' from FSOT and Employment possibilities that include the President of the United States of America under Clinton Global Initiative that offer her Traumatic Brain Injury accommodation. Ms. Atherton is continually displaced by these repercussions from the Traumatic Brain Injury accident. Ms. Atherton has lost her place in her profession as a Technology & Culture Entrepreneur using Visual Linguistics. Ms. Atherton has been sidelined by Government Services who fail to understand her demonstration that she can overcome her

Traumatic Brain Injury disability has received a set back by a public withdraw of her person from society. She endeavors to advocate for other Traumatic Brain Injured persons. Ms. Atherton finds herself continually 'Weill Cornell Hospital/NY Presbyterian White Plains Hospital.

8.0 CIVIL RIGHTS VIOLATION under Mental Health Community – Fundamental 'Liberty' in the United States of America.
New York State courts have set clear guidelines for when hospitals can force medication on psychiatric patients. In the landmark *Rivers v Katz case in 1986,* which established the current standard of forced treatment, Judge Fritz Alexander of the New York State Court of Appeals wrote a unanimous decision citing patients' "fundamental liberty interest to reject antipsychotic medication," including patients committed involuntarily to a hospital:

"In our system of a free government, where notions of individual autonomy and free choice are cherished, it is the individual who must have the final say in respect to decisions regarding his medical treatment," wrote Judge Alexander. "This right extends equally to mentally ill persons who are not to be treated as persons of lesser status or dignity because of their illness." The decision ensured that a court must find patients to be 'dangerous' or 'incapable of making treatment decisions' before their right to refuse medication can be nullified. Rivers v. Katz, 67 NY 2d 485 - NY: Court of Appeals 1986 "...hold that the due process clause of the New York State Constitution (art I, § 6) affords 'involuntarily committed' mental patients a fundamental right to refuse antipsychotic medication. "While" [e]very human being of adult years and sound mind has a right to determine what shall be done with his own body." (*Schloendorff v Society of N.Y. Hosp., 211 NY 125, 129 [1914]*) and to "control the course of his medical treatment." (*Matter of Storar, 52 NY2d 363, 376 [1981]*),

"An individual's liberty cannot be deprived by "warehousing" him in a mental institution when he is not suffering from a mental illness or defect and in no need of in-patient care *683 and treatment[6] on a ground which amounts to a presumption of a dangerous propensity..."*Matter of Williams*, 157 F Supp 871, 876, affd *sub nom. Overholser*.) The NEW YORK Supreme Court has recently stated that: "[A] state may not confine without more a non-dangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends" (*O'Connor v Donaldson*, 422 US 563, 576).

The issue at stake here is viable personal liberty and right to conduct one's life, against a licensed psychiatrist medical certification drawn from DMS – V symptomology for 'mental illness' treatment placed before a court who in the State of New York ratifies the Mental Hospital's opinion 95% of the time. This indicates according to recent New York Supreme Court ruling the disregard of the intent of the law *River v. Katz* in favor of the execution of the process of procedure contained in New York Statues: "Chief Justice BERGER, however, in a concurring opinion, expressed the belief that our concepts of due process would not tolerate the confinement of an individual thought to need treatment where the sole justification for such deprivation of liberty is the provision of some treatment."*(O'Connor v. Donaldson*, *supra*, p 589).

Ms. Atherton's rights as a Traumatic Brain Injury Disabled person were completely ignored, trampled upon, crushed as if they failed to exist. These Traumatic Brain Injury CIVIL RIGHTS were seen as no consequence by the Westchester County New York Supreme Court. The confusion of Traumatic Brain Injury disability through observed behavior, mixed with the 'symptom list of the DMS-V became a license by the Court to allow a psychiatrist to wield his prescription pad as a weapon. This excess privilege of prescription pad to destroy, alter, confuse, and medically torture Ms. Atherton in the name of mental health violates all the citizen protection laws in the United States of America of America. None of the conditions required by law of a prospective patient to be a clear danger to exist impeded these licensed psychiatrists. The Westchester County New York Supreme Court failed to exercise their duty of rational evaluation of argument, common sense, medical certainty, and conformity with existing New York Laws that protect the Traumatic Brain Injury. Judge Murphy heedlessly proceeded to ratify NY Presbyterian White Plains Hospital's medical certification of 'treatment procedure againstprotests, facts of initial admission 'plucking a citizen from the street', and following psychiatric admission New York State regulations proven to have been passed over and excluded.

*42 U.S. Code § 1983 - Civil action for deprivation of rights*

### Atherton 'Liberty' Complaint in New York State

*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of America of America or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."*

**9.0 Relief** - Wherefore, Plaintiff Arlene Atherton Demands judgment against all defendants in the sum of $450,000 plus interest from July 2015 to present as Ms. Atherton continues to suffer from the actions of defendants who failed to care for her Traumatic Brain Injury Disability.

(THIS SECTION INTENTIONALLY LEFT BLANK)

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented fro an improper purpose (such as to harass, case unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law of by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the clerks Office may result in the dismissal of my case.

Dated May 29, 2018

Signed Name

Arlene R. Atherton – Plaintiff/Pro Se
Printed Name

Confidential due to Emergency Protection Order
Chicago, Il 60602

I have read the Pro Se (non-prisoner) consent to Receive Documents Electronically      ___ Yes ___ No

I DO NOT CONSENT TO ELECTRONIC DOCUMENT RECEIPT.

## Atherton 'Liberty' Complaint in New York State

**Who is Ms. Atherton?**

Ms. Atherton is an accomplished professional. She has been a self-employed consultant her entire life. She commenced her career with Pre-IPO consulting to Silicon Valley Startup Industry. Ms. Atherton is a graduate of Columbia University in the City of New York, and won Department honors for her thesis - *Visual Linguistics.* Ms. Atherton has traveled extensively - going around the world - 4 times. Ms. Atherton has double degrees from Columbia University - Art History, and Cultural Anthropology. She won awards for applying Structural Anthropology to the Internet in year 2000. Ms. Atherton had aspiration of working for the UNESCO after finishing her current consulting work. Ms. Atherton was an international consultant at the time she was struck as a pedestrian in the auto accident 1/7/2011.

Ms. Atherton was denied Medical Care in the State of New Mexico. She traveled in a 'wheelchair' across 9 states looking for Traumatic Brain Injury Rehabilitation, and Traumatic Brain Injury Medical Care. Ms. Atherton found herself 'stranded in rural areas of the United States of America of America' - at the hands of Weill Cornell Hospital/ Hospital in New York State; who could not understand her profession, or her mission to meet with her friend enroute to Hartford Insurance company handing the claim for the Traumatic Brain Injury. Weill Cornell Hospital/ Hospital is less than 50 miles from New York City; home of the nations top 'professions', finest educational institutions, national media, and medical research.

Ms. Atherton has the following accomplishments:

New York City
- 1st Responder Civilian 9/11
- Writing the book "Going on - Memories of September 11th, 2001.
- S.E. Asia Tsunami
- Washington, DC Asia Society - Children Speak: Tsunami - a photographic essay of the 2005 SE Asia Tsunami
- New York Asia Society - Children Speak: Tsunami - a photographic essay of the 2005 SE Asia Tsunami
- George W. H. Bush Presidential Library - Children Speak: Tsunami - a photographic essay of the 2005 SE Asia Tsunami, with 51 minute Video of the US NGO who responded to the disaster - 2006 National Memorial.

International Consulting
- Gulf Country - Visual Representation - Tourism Site - Arabic country - Islamic Society.
- Eastern Europe - Visual Representation - Culture Site - first ever pure - humanities driver web site on Cultural topics of the Country - Country Branding.

She has continually been plagued with "mental illness' diagnosis as Rural America from her 'long term commitment' could not understand a independent consulting life, and international career. Those records failed to reveal Ms. Atherton's skill in documentary photography in Culture. Ms. Atherton is the first FEMALE Technology & Culture Entrepreneur to be accepted in the international community for 21st Century Internet and Visual Representation Independent Contract advices to Government Teams.

Ms. Atherton was grieved to find herself with the loss of her life savings 1.3 million dollar house, due to the accident that caused the Traumatic Brain Injury due to the 'long term commitment' failing to treat her Brain Injury. The 'long term commitment' perpetuates the 'misperception' by rural America failing to respond to Ms. Atherton's professional life. The Weil Cornell Hospital/ St. Vincent Hospital is unscrupulous as a FEDERAL HEALTH INSURANCE Provider attempting to gain revenue from a 'patient suffering from the perils of poverty' leads to this Complaint.

Ms. Atherton is now forced to spend years in litigation- clearing her name from 'mental illness' in order to return to her international consulting work. The disregard by Weill Cornell Hospital/ NY Presbyterian White Plains Hospital health care employees in a private institution refusing the Standard of Care Health Codes of the State of New York. The acceptance by Weill Cornell Hospital of the Civil Servants of the State of New York a) Law Enforcement pretending to do a 'medical evaluation' of Ms. Atherton's feet; b) ER Psych Unit mental health care workers in the

field of Mental Hygiene; and c) Judge Murphy of Westchester County New York Supreme Court in the discharge of their duties has done extensive harm to Ms. Atherton.

Ms. Atherton submits this complaint for a "Jury Trial" in the UNIED STATES DISTRICT COURT of Northern Illinois -, who understands 'intellectual property' 'private consulting',' and 'rendering advice' as a profession.

THIS SECTION INTENTIONALLY LEFT BLANK

## Atherton 'Liberty' Complaint in New York State

Parties in this Compliant

**Plaintiff 1**

Arlene R. Atherton
~~208 E. 51st Street~~ *17 E. Amroe*
New York, NY 10022 *Chicago, IL 60602*

**Defendant 1**

167 E. 51st
New York CIty, NY 10022
(212)826-3211

**Defendant 2**

Weill Cornell Hospital
668 York Ave
New York City, NY 1???1
T- ?????

**Defendant 3**

NY Presbyterian Westchester  Hospital
21 Blloomingdale Blvd
White Plains, NY 10605
T-(914) 682-9100

**Defendant 4**

Attending Physician
NY Presbyterian Westchester  Hospital
21 Blloomingdale Blvd
White Plains, NY 10605
T-(914) 682-9100

**Defendant 5**

Westchester County New York Supreme Court
Hon. J. Emmett Murphy
111 Dr. Martin Luther King Jr. Blvd.
Civil Department - 9th floor.
White Plains, NY 10601
(914) 824-5300

INDEX – TABLE OF CONTENTS

I ) New York Criminal Action – 'Kidnapping' by Civil Servants                    **16**
      A)  Encounter with Hasting-on Hudson Police.
      Cyring is seen as therapeutic to the body
      Kidnapping
      False Report
      Profiling Bias
      Disorderly conduct by police
      Defamation of Character by Civil Servant
       a) New York Slander
       b) New York Libel
      B) False Reporting to Hasting on Hudson Dispatch of an 'incident'.
      C) HATE CRIME by Hasting on Hudson Police

II) New York State: Article 31 NY Mental Hygiene Law                    19
      A)  New York State Law on Mental Illness
      B)  New York State Law on  'Intellectual Disability

      C)  New York State Disability Rights

      D)  New York State Law Traumatic Brain Injury Disability

      E)  New York State Traumatic Brain Injury (TBI) Waiver Program.

      F)  New York State Traumatic Brain Injury Rights Services
III)  Weill Cornell Hospital/ St. Vincent Hospital discriminated against Ms. Atherton
    Traumatic Brain Injury according to Federal & State guidelines.                    22
      A)  Mental Health Treatment
      B)  Traumatic Brain Injury Disability
      C)  Disregard of Medical Standards to evaluate Traumatic Brain Injury
1) Rancho Los Amigo evaluates symptomology of Traumatic Brain Injury
    from mild, moderate, to severe.
      a) Rancho Los Amigo evaluates Traumatic Brain Injury
the social and emotional problems.
 b) Rancho Los Amigo shows Traumatic Brain Injury
fatigue problems are typical.
c) Rancho Los Amigo  scale shows that  acoustical sensitivity
(loud noises)  for Traumatic Brain Injury survivor is typical
the social and emotional problems.

IV)  Weill Cornell Hospital/ St. Vincent Hospital applied 'Mental Health' evaluation
    Instead of Traumatic Brain Injury at Admission and Discharge violating American's
      With Disabilities Act 1990.                    24
        A) Admission  Weill Cornell Hospital 12/9/2015
      B) Admission NY Presbyterian White Plains Hospital 12/11/2015
      C) Discharge  Weill Cornell Hospital 12/11/2015
      B) Discharge NY Presbyterian White Plains Hospital 2/2/2016

V)  Weill Cornell Hospital/ St. Vincent Hospital  violated New York Office of Mental                    25
    Health Services/Danger to others/Care for Self".

VI) Westchester County Mental Health Court – Authorized Treatment – Article 31                    26

**Atherton 'Liberty' Complaint in New York State**

New York Mental Hygiene Law
    A) Weill Cornell Hospital False Diagnosis
    B) NY Presbyterian White Plains Hospital False Diagnosis
    C) Pharmaceutical Treatments
        1) Haldol
        2) Zyprexa
    D) Impact to Legal Case Auto-accident creating the Traumatic Brain Injury

VII) Weill Cornell Hospital/ St. Vincent Hospital discriminated against Ms. Atherton disability
Traumatic Brain Injury failing to regard Americans with Disabilities Act 1990, Independent Living
and New York Disability law.                                         28

    A) Legislation to support persons with disabilities for Independent Living
    B) New York State 'Intellectual Disability' Independent Living
    C) Fair Housing Act – 1968
    D) Mental Illness diagnosis removes access for traumatic brain injury treatment
    E) New York States allows for Traumatic Brain Injury disabled person on an 'outpatient basis'.
    F) Ms. Atherton was living independently prior to 'forced commitment' with Weill Cornell Hospital/NY
        Presbyterian White Plains Hospital.
    G) New York Independent Living allows for resumption of employment/vocation.

VIII) Ms. Atherton meets new York Traumatic Brain Injury definition and proof injury       30
IX) Weill Cornell Hospital/ St. Vincent Hospital violated Admission and Discharge Guidelines
For Mental Health Hospitals.                                            31
X) Weill Cornell Hospital/ St. Vincent Hospital failed to meet New York State and       33
Federal   Health Care 'medical necessity' threshold for 'Medical Malpractice'.
    A) Federal Guideline for MEDICAID Providers
    B) New York State definition of 'medical necessity'
    C) 'Medical Necessity by National Academy of State Health Policy
D) 'Conflict of Interest' between Weill Cornell Hospital and NY Presbyterian White
    Plains Hospital
E) ATtending Physician failed to medical 'medical necessity' criteria for
        Admission to Weill Cornell Hospital/NY Presbyterian White Plains Hospital

    F) Ms. Atherton is states that the 'inpatient' treatment under St. Joseph Medical
    Center/NY Presbyterian White Plains Hospital violates 'medical necessity of under Federal
    and State guidelines
    G) Weill Cornell Hospital/NY Presbyterian White Plains Hospital violates Traumatic
    Brain Injury discrimination

XI) Weill Cornell Hospital/ St. Vincent Hospital violated New York State Mental Health
'Patient Bill of Rights', Informed Consent, Right to Refuse Treatment, Capacity to make
Mental Health Decisions.                                          35
    A) Informed Consent
    B) Right to refuse treatment
    C) Capacity to make Mental Health decisions.
    D) Westchester County Mental Health Court and Weill Cornell Hospital/NY Presbyterian
White Plains Hospital violated Ms. Atherton's Traumatic Brain Injury disability right as a person unable to make
'Mental Health' decisions.
    E) Authorized Representative
    F) Weill Cornell Hospital/St. Vincent Hospital impact on the Atherton Personal Injury Case.

XII) Direct Damages from Weill Cornell Hospital/ St. Vincent Hospital          37

14

XIII) Weill Cornell Hospital/ St. Vincent Hospital denied Ms. Atherton 'Freedom of Religion'
      failing to respect her spiritual beliefs, customs, and practices.           38
          A) United States Constitution 1st Amendment rights – Freedom of Religion
          B) Weill Cornell Hospital/ St. Vincent Hospital disregard of Freedom of Religion 1st Amendment Rights.
C) In Scientology it is a PROHIBIITED practice to deliberately 'pllute' the body CLEAR BODY/CLEAR MIND achieved by the purif.
D) Scientology is a 'Multi faith' religion – it believes in the preservation of the creator.
E) Weill Cornell Hospital/ St. Vincent Hospital has violated
 all of Ms. Atherton's "Bill of Rights in New York State by their 'mental health' decisions
F) Weill Cornell Hospital/NY Presbyterian White Plains Hospital is under the authority of New York State Office of Mental Health subject to Federal and State Law.
 G) Weill Cornell Hospital/ NY Presbyterian White Plains hsoptial hasve violated all aspects of Ms. Atherton's Bill of Rights with a 'mental health' diagnosis.
H) Westchester County Mental Health Court discrimination of Ms. Atherton's Religion
I) Right for Redress for CIVIL RIGHTS violations 'freedom of religion'.

XIV) Medical Torture in America                   40
        A) Medical Torture Definition
B) Scope of Medical Torture
          C) Attending Physician participated in experimentation on human subjects.
          D) CDC sponsored clinical evaluation of Traumatic Brain Injury response to
Pharmaceuticals.
          E) Medical Torture Intent
          F) Medical Complicity in Medical Torture
          G) Ms. Atherton's receipt of Medical Experimentation and Medical Torture

XV) New York State Medical Malpractice             43
        A) Definition of 'Medical Malpractice' and 'Medical Torture'
        B) ATtending Physician of Weill Cornell Hospital/ St. Vincent Hospital
        breeched Standard of Care.
        C) According to Medical Records of Weill Cornell Hospital/ St. Vincent
        Hospital there was NO notation of SYMPTOMS of 'Mental Illness'.
          D) Disregard of Patient History
          E) Disregard of Neuroplasticity
          F) ATtending Physician reliance on psychiatric medication placed
            Ms. Atherton 'At-Risk'.
            1) Contraindications for Ms. Atherton's medical condition
              prescribing HALDOL.
            2) Contraindications for Ms. Atherton's medical condition
              prescribing ZYPREXA.

XVI) Weill Cornell Hospital/ St. Vincent Hospital engaged in abusive actions in the
care and treatment of Ms. Atherton             46
        A) Restraints
        B) Seclusion
        C) "Forced Drugging"
        D) Lack of Traumatic Brain Injury Therapy

XVII) Cumulative impact of Weill Cornell Hospital/ St. Vincent Hospital medical treatment
on the Atherton Personal Injury Case             47

**Atherton 'Liberty' Complaint in New York State**

I) New York Criminal Action – 'Kidnapping' by Civil Servants
Ms. Atherton from the streets of New York City, NY. Ms. Atherton was discriminated against by New York CIty Police Department. They used Ageism, Gender, and marital status, no traveling companions (a single female) to discriminate against her. New York City should be known to be reasonably affluent, educated, and accustomed to many visitors.

A) Encounter with Hasting-on Hudson Police:
On 12/9/2015 Ms. Atherton had just filed Personal Protection Petition Order Friday in downtown Manhattan NYC. Ms. Atherton got off the 3rd ave bus at Au Bon Pain and entered as a patron near 55th street. She passed by the other patrons entering the door. She was then outside after the store closed. Ms. Atherton was crying. Her store had closed. The protection order she just filed would have to be done again, as she was asked to 'wait' in another area by the court officials, and never saw the judge. There is no such thing as 'plea bargain' for stalking charges or a protection order. It is either granted or not granted. She was stopped by a NYC Police officer. Ms. Atherotn explained that this encounter could be a consequence of the protection order filed, and falls under the 3rd party stalking laws of NY. If the police officer participated it could impact his record. The NYC Police officer claimed he didn't care if he lost his badge; he was calling the EMT and having Ms. Atherton taken in. He let the EMT arrive and 'make the call' everyone thought on the 'safe side' that if Ms. Atherton was crying she should be checked. Since when is 'crying on the streets of America' a dangerous offense? Or a break in reality? Ms. Atherton was taken to Weil Cornell ER Psych ward and then transported to NY Presbyterian Hospital in White Plains, NY - a subsidiary of Weil Cornell Hospital.

Only when she saw the records at the NY Presbyterian Hospital did Ms. Atherton find out there was a report that she was 'violent' and injured a person by 'hitting them'. This was a strong recollection by Ms. Atherton of SWVMHI who stated Ms. Atherton was unfit to live alone as 'she might be accosted by someone and falsely accused of assault.' That is what was taking place here. Regardless of Ms. Atherton's protest that the 'said person whom she "hit" was not named by the police, found by the police, or identified in the dispatch report Ms. Atherton was treated as a danger to others.

Crying is seen as therapeutic to the body:
> **"Crying** is the shedding of tears in response to an emotional state. Emotions that can lead to crying include anger, happiness, or sadness. The act of crying has been defined as "a complex secretomotor phenomenon characterized by the shedding of tears from the lacrimal apparatus…A neuronal connection between the lacrimal gland (tear duct) and the areas of the human brain involved with emotion has been established….[Tears produced during emotional crying have a chemical composition which differs from other types of tears. They contain significantly greater quantities of the hormones prolactin, adrenocorticotropic hormone, and Leu-enkephalin,[5]and the elements potassium and manganese.[3] When an individual experiences emotions such as sorrow, the sympathetic nervous system still responds in this way. (Wikipedia.com)

The normal emotion of crying does not require the New York City Police, nor does it require the EMT, nor does it mean a person is abnormal. Understanding a normal state of being in a human is part of the New York City Police officer's job.

*Kidnapping*: Ms. Atherton had committed NO CRIME, NO THEFT, NO PROPERTY DAMAGE to indicate that she was a liability to the New York City community. The summoning of the EMT by New York City Police was a 'false report' to dispatch "medical service" for Ms. Atherton. New York City Police wanted the appearance of 'doing their job" claiming citizen well-being to 'medically evaluate her emotions for crying in public'. *NYSC Penal Code Section 135.20,*[2] *et seq.* (kidnapping, coercion, and related offenses)- *2nd degree - Class B Felony. 2) He restrains the person abducted for a period of more than twelve hours with intent to: (a) Inflict physical injury upon him or violate or abuse him sexually;"* When the New York City Police officer summoned the EMT the intuition was to restrain Ms. Atherton, have her locked up in a 72 hr. TDO – Temporary Detention Order. This qualifies as 'kidnapping' as Ms. Atherton was not a danger to self, or others or unable to care for self. Not getting a Protection Order against this every same event is the reason for the emotional distress leading to crying. This means it is perfectly OK to pluck someone off the street and detain them against their will for an ordinary emotion.

*False Report:* In reality – Ms. Atherton ended up at Weil Cornell Hospital Emergency Psych Unit., not a jail, as there was NO CRIME. Ms. Atherton States – What does psychiatry have to do with her 'expressions of sadness or being ALONE, or being 'mature age', or being female? False Reporting to New York City Dispatch of an 'incident'. NY Penal Law § 240.50[3] Falsely reporting an incident in the third degree *(N.Y. PENAL LAW § 240.50). "A person is guilty of falsely reporting an incident in the third degree when, knowing the information reported, conveyed or circulated to be false or baseless,"* New York City Police had effected a Temporary Detaining Order on an ordinary citizen, for NOTHING, who was disappointed in not receiving a protection order about this very same set of events.

*Profiling Bias:* New York City Police are guilty of a HATE CRIME while in the course of their profession. New York City Police selected Ms. Atherton because she was a single, white female, absent of any friends or support. New York City Police officer duty is NOT TO EMT EVERY CALL AND TRANSPORT, but to evaluate the situation and respond appropriately. *NY Civil Rights Code Section: 79-n.[4] Bias-related violence or intimidation; civil remedy. (a) "disability"; (b) "age"; (c) "sexual orientation"; (d) "gender.* New York City Police exceeded their scope of powers by abusing their authority to arrest civilians. This has occurred in various parts of the United States. A high profile case is the Trayvon Martin shooting in Florida, who took advantage of his ethic heritage as African American (Black), from Miami Gardens, FL (largest African American Community in FL) his age – 17 (youth- no rights), unarmed (vulnerable), low-income ( under privileged – education, access to the courts). In a similar manner New York City Police spotted Ms. Atherton as isolated, sharing similar vulnerable characteristics as disenfranchised citizens of the United States. New York City Police. orchestrated a means to remove Ms. Atherton from their community claiming they were only 'doing their job.'

*Disorderly Conduct by Police:* Through the use of calling the EMT on Ms. Atherton New York City Police officers not only 'disturbed Ms. Atherton's quiet enjoyment of the Au Bon Pain and 3rd Ave', but created a public scene to 'forcibly directing' Ms. Atherton into compliance with the EMT transport to Weill Cornell Hospital as a form of arrest. NY *Penal Code - 240.20- disturbing the Peace - Offensive words: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture;"* In this manner New York City Police were guilty of 'disturbing the peace' - using insulting words on Ms. Atherton as to her medical condition". The insulting word was that her "she needed medical attention" as a lure to call the EMT. 'Crying on the street' is not a medical condition. Ms. Atherton never indicated any 'pain', she never stated a request to find 'medical treatment'. Her only upset was she would have to repeat the same events tomorrow to gain the protection order. New York City Police fully intended via their call to EMT to take Ms. Atherton to a Psychiatric Emergency Room not a Physical Medicine Emergency Room. The call to EMT and destination was deliberate on the Part of the Police. *NY...*New York City-Police department broke New York Law using abusive language referring to Ms. Atherton 'claiming she had no purpose being there'. They classified her as a 'derelict" an 'unwanted person'. The 'public inconvenience' The obscene gesture is the 'public humiliation' of an EMT truck arriving in a business area at apx 5:00 PM. The public inconvenience is Ms. Atherton as a member of the public is denied 'freedom of movement', liberty, and peaceful occupation of a public street. Ms. Atherton was concerned that New York City Police had some aspect of retaliatory treatment for Ms. Atherton filing a Protection Order earlier; or responding to a 'concerned citizen call – typical of 3rd party stalking. This is yet another 'co-incidence' Ms. Atherton has experienced since the 1/7/2011 auto accident.

*New York Defamation by Civil Servant:* By forcing transport for psychiatric evaluation of Ms. Atherton, New York City Police Officers defamed[5] Ms. Atherton's health condition. New York City Police on Hudson endeavored to give Ms. Atherton a 'Health History' record under disguise of a 'call of duty –public safety' issue profiling her in advance as a 'mental illness' candidate by 'alleging a person has a loathsome disease'. "*Defamation: whether spoken or written, is limited to four categories of false statements that either (1)accuse a person of committing a serious crime; (2) injure or damage a person's business, trade, or profession; (3) allege that a person has a loathsome disease; or (4) imputes unchastity. Where a statement qualifies as defamation per se, the law presumes that damages will result, avoiding the necessity of proving them separately.*" (http://injury.findlaw.com/torts-and-personal-injuries/what-is-defamation-per-se-.html)

New York City Police refused to accept her, classifying her as 'vagrant'. They disregarded her Traumatic Brain Injury disability which makes her very fatigued and emotionally liable. Not only were they disrespectful, they are making it impossible to recover from the Traumatic Brain Injury trauma with a medical history of 'mental illness'. Ms. Atherton is unable to regain social contribution in life by constant removal from society. Subsequent Temporary Detaining Orders,

### Atherton 'Liberty' Complaint in New York State

due to the issues in this Complaint, and additional 'mental health' diagnosis LABELS restrict Ms. Atherton's access to disability accommodation under Americans with Disabilities Act of 1990.

    *a)* *New York Slander* - New York City Police Department spoke untruly about Ms. Atherton's conduct and her ability to conduct herself in public. It is this Police Report given to Weil Cornell Hospital which triggered the requirement for psychiatric treatment. The Weil Cornell Hospital report used for admission to NY Presbyterian White Plains Hospital who delivered a Psychiatric LABEL under a 'false diagnosis' as a 'mental illness' diagnosis. *"Slander is an untrue spoken statement about a person that harms their reputation and standing in their community. A person injured by slander can bring a civil lawsuit against the party that made the false statement*."( https://www.avvo.com/legal-guides/ugc/claims-for-defamation-in-new-york)

    *b)* *Slander Damage:* Hastings-on- Hudson Police actions led to the 'false diagnosis; and precipitated successive "forced commitments" continuing to 'label' Ms. Atherton as an 'unwanted person in society'. Ms. Atherton was 'plucked off the street' (kidnapped) for doing nothing but 'breathing, crying, and occupying public space'. This SLANDER has entered the Ms. Atherton's medical records and attempts at employment. It continues to recharacterise the 1/7/2011 auto accident from a Traumatic Brain Injury 'severe' to one of 'mental illness' matching the DEFENDANT Driver's claim of 'mental illness' when Ms. Atherton had a 'Traumatic Brain Injury'. Employers are reluctant to have someone with a 'long-term' 'health history of mental illness'. Though, Ms. Atherton is protected under Americans with Disabilities Act 1990 for Traumatic Brain Injury disability - there is such a social stigma with 'mental illness' and 'uncontrolled behavior' that employers don't want to take the chance. Ms. Atherton is not unstable or unsuitable for employment.

**B) False Reporting to New York City Dispatch of an 'incident'**.                    Ms.

Atherton states that there was a FALSE REPORT by some civilian to dispatch New York City Police. Police should have accepted Ms. Atherton's statement that she was 'crying in upset at not getting the protection order.' and not in need of medical attention. Ms. Atherton states that this demonstrates the Profiling Bias by New York City Police by failing to to resolve an ordinary issue. *NY Penal Law § 240.50 Falsely reporting an incident in the third degree (N.Y. PENAL LAW § 240.50).* *"A person is guilty of falsely reporting an incident in the third degree when, knowing the information reported, conveyed or circulated to be false or baseless, he or she... "2. Reports, by word or action, to an official or quasi-official agency or organization having the function of dealing with emergencies involving danger to life or property, an alleged occurrence or impending occurrence of a catastrophe or emergency which did not in fact occur or **does not in fact exist;"***

New York City Police knew there was no such emergency that exists, nor does Ms. Atherton need medical treatment for crying.

**C) HATE CRIME by New York City Police**

New York City Police selected Ms. Atherton based on her vulnerable profile as outlined above, with the ability to use their 'police powers' to harm Ms. Atherton based on her incongruent presentation with the demographic profile of the inhabitants of New York City.

*NY Civil Rights Code* **Section: 79-n. Bias-related violence or intimidation; civil remedy**. *"1. The following  definitions are applicable to this section:*

*(a) The term "disability" means a physical or mental impairment that substantially limits a major life activity.*

*(b) The term "age" means sixty years of age or more.*

*(c) The term "sexual orientation" means a person's actual or perceived homosexuality, heterosexuality, or bisexuality.*

*(d) The term  "gender" means a person's actual or perceived sex and shall include a person's gender identity or expression.*

*2. Any person who **intentionally selects a person** or property **for harm** or causes damage to the property of another or causes physical injury or death to another in whole or in substantial part because of a belief or **perception** regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person, regardless of whether the belief or perception is correct, shall be liable, in a civil action or proceeding maintained by such individual or group of individuals, for injunctive relief, damages, or any other appropriate relief in law or equity. If it shall appear to the satisfaction of the court or justice that the respondent has, in fact, violated this section, an injunction may be issued by such court or justice, enjoining and restraining any further violation, without requiring proof that any person has, in fact, been injured."*

New York City Police SELECTED Ms. Atherton for a TDO – that is harm – a temporary detention for 'crying on the street'. Losing her life for 59 days in a mental hospital – insane asylum is HARM.

At NY Presbyterian White Plains Hospital initially her doctor prescribed Haldol for Ms. Atherton. Haldol is administered for persons who are 'psychotic'- only 100,000 people have a psychotic break in a single year. How is a normal emotion like crying considered psychotic? Wouldn't that make the entire population of America psychotic to evidence it based on 'crying in public'?

Attending Physician forced a 'medication over objection' with Ms. Atherton at WESTCHESTER COUNTY Mental Health Court. She was forced to appear on a 'gurney' in restraints, or she was not allowed to go to Court. Ms. Atherton was humiliated and demeaned before she ever opened her mouth by this type of treatment. Ms. Atherton offered to WALK to the Court which was denied. The WESTCHESTER COUNTY COURT did not accept Ms. Atherton's statement that she did not 'hit' anyone, and was falsely accused. Ms. Atherton explained to the Judge and to the court that this was 3rd party stalking used to obtain a 'mental health diagnosis', the very reason she went to Court to obtain a Protection Order. There was no witness to the 'hitting of another person' No Named victim, no hospital report required based on injury. It was an entire fabrication to create a 'mental illness' diagnosis.

## II) New York State Regulations: NY Mental Hygiene Law §31.01 - 31.37. Definitions of Mental Illness, Intellectual Disability, Disability Law. Americans With Disabilities Act 1990 Disability protection

Ms. Atherton's Traumatic Brian Injury Disability rights were violated when New York City Police labeled her 'mentally ill', and placed a call to the Emergency Medical Treatment for a Temporary Detaining Order at Weil Cornell Hospital in New York City. FEDERAL CIVIL RIGHTS - Disability Discrimination: Americans with Disabilities Act 1990 has been violated 42-12101.

Americans With Disabilities Act 1990 Disability protection
42-12101
(1) Findings) physical or mental disability in no way diminish a persons right to fully participate in all aspects of society, yet many people with physical and mental disability have preclude from doing so because of discrimination; others who have a record of disability also have been subjected to discrimination;
(2) historically, society has tended to isolate and segregate individual with disabilities…
(3) discrimination against individual with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services.
(4) unlike individual show have experienced discrimination n the basis of race, color, sex, national origin, religion or ages, individual who have experience discrimination on the basis of disability have had not legal recourse to redress such discrimination.
(5) individuals with disability continually encounter various forms of discrimination, including out right intentional exclusion…overprotective rules, and policies, ….exclusionary qualification standards and criteria, segregation, and relegated to lesser services programs activates benefits jobs and other opportunities.
(6) census data, national polls and other studies have documents that people with disability as a group, occupy an inferior stat in our society and are severely disadvantaged socially, vocationally, economically and educationally.
(7) the Nation's proper goals regarding individuals with disability are to assure equality of opportunity, full participation, independent living, and economic self sufficiency for such individuals.
8) The continuing existing of unfair and unnecessary discrimination and prejudice denies people with disability the opportunity to compete on a equal basis and to pursue those opportunities for which our free society is justifiable famous, and costs to the United State billion of dollars in unnecessary expense resulting form dependency and non productivity.

Violations of ADA 1990 can lead to suspension under 42 U.S. Code § 1010 - Other administrative provisions of MEDICAID/MEDICARE benefits paid to participating institutions.

FEDERAL DEFINITIONS of Disability 42-121102

**Atherton 'Liberty' Complaint in New York State**

(1)Definition of disability

The term disability means with respect to an individual – (A) a physical or mental impairment that substantially limits one of more major life activity of such individual. (B) a record of such impairment; or (C) being regarded as having such impairment…

(2) Major life activities U.S.C. 42-121102

  (A) In general

  Major life activities include but are not limited to caring for oneself, performing manual tasks, seeing, hearing, eating , sleeping, walking, standing, lifting bending, speaking, breathing, learning, reading concentration, thinking communication and working.

  (B) Major bodily functions

  Major life activity also includes the operation of major bodily function, including but not limited to, functions of immune system, normal cell growth, digestive, bowel, bladder, neurological, brain respirator circulation endocrine, and reproductive fuctions.

  (C) Regarded as having an impairment

  An individual meets the requirement of being regarding as having such an impairment, if the individual establish that he or she has been subjected to an action prohibited under this chapter because of actual or perceived, physical or mental impairment. Whether or not the impairment limits or is perceived to limit a major life activity.

A)  **New York State Law on Mental Illness**

  - ***New York Mental Hygiene Law g§ 1.03 Definitions "Mental Illness'***
    "The individual is 18 years of age or older and currently meets the criteria for a DSM-V psychiatric diagnosis other than alcohol or drug disorders, organic brain syndromes, developmental disabilities or social conditions."

  - ***14 CRR-NY 580.1 Definition - 'Mental Illness'*** -"a disorder or disturbance in behavior, feeling, thinking or judgment so severe as to require care and treatment for mental illness."

  - ***New York Mental Hygiene Law § 1.03 Definitions***
    "Mental disability" means mental illness, mental retardation, developmental disability, alcoholism, substance dependence, or chemical dependence.  A mentally disabled person is one who has a mental disability."                                                                "Services for the mentally disabled" - "means examination, diagnosis, care, treatment, rehabilitation, or training of the mentally disabled."

B)  **New York State Law on ' Intellectual Disability'**

  - ***NY Intellectually Disabled - NYS Mental Hygiene Law§ 1.03 Definitions***
    "Developmental disability" means a disability of a person which:                                      (a)
    (1) Is attributable to mental retardation, cerebral palsy, epilepsy, **neurological impairment**, familial dysautonomia or autism;
    (2) Is attributable to any other condition of a person found to be closely related to mental retardation because such condition results in similar impairment of general intellectual functioning or adaptive behavior to that of mentally retarded persons or requires treatment and services similar to those required for such person;  or                                                                    (3) Is
    attributable to dyslexia resulting from a disability described in subparagraph (1) or (2) of this paragraph;
    (b) Originates before such person attains age twenty-two;
    (c) Has continued or can be expected to continue indefinitely;  and
    (d) Constitutes a substantial handicap to such person's ability to function normally in society.

**C)** State of New York Disability Rights -
- **New York Executive Law - Executive § 701**[6]- a disabled person is an "... individual: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;"
- Disability Rights New York – A New York Agency
  **Vision Statement**: *DRNY envisions an inclusive world that provides equal opportunity for individuals with disabilities- one that is free from discrimination, abuse and neglect."*
  **New York Disability Rights** *Definition* "A disability is defined as a past or present physical or mental impairment that substantially limits or has limited one or more major life activities".
- *NY All Disabled persons eligible for ACESS - VR* Vocational Rehabilitation administered under NY Department of Education _"Assisting Persons with Disabilities to achieve and maintain employment, and to support independent living."

**D ) New York State Laws of Traumatic Brain Injury as a disability**
- *New York Public Health Law § 2741. Definitions* – *"the term "traumatic brain injury" means an acquired injury to the brain* **caused by an external physical force resulting in total or partial disability or impairment** *and shall include, but not be limited to damage to the central nervous system from anoxic/hypoxic episodes or damage to the central nervous system from allergic conditions, toxic substances and other acute medical/clinical incidents. Such term shall include, but not be limited to, open and closed brain injuries that may result in mild, moderate or severe impairments in one or more areas, including cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem-solving, sensory perceptual and motor abilities, psycho-social behavior, physical functions, information processing and speech. Such term shall not include progressive dementias and other mentally impairing conditions, depression and psychiatric disorders in which there is no known or obvious central nervous system damage, neurological, metabolic and other medical conditions of chronic, congenital or degenerative nature or brain injuries induced by birth trauma."*
- *New York Social Services Law § 365-a. Character and adequacy of assistance* – *"(h) speech therapy, and when provided at the direction of a physician or nurse practitioner, physical therapy including related rehabilitative services and occupational therapy; provided, however, that speech therapy, physical therapy and occupational therapy each shall be limited to coverage of twenty visits per year; such limitation shall not apply to persons with developmental disabilities or, notwithstanding any other provision of law to the contrary, to* **persons with traumatic brain injury;"**
- We classified the brain injury into the following categories: *anoxic, vascular, infectious, inflammatory, traumatic, toxic-metabolic, tumor-related and seizures.* (https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4791928/)

**E) New York State Traumatic Brain Injury Program**
"A traumatic brain injury (TBI) is an injury to the brain or skull caused by an external force, such as a strike or impact." Brain injuries are often permanent and disabling, unlike other injuries, such as broken legs or cuts that can heal." (https://www.health.ny.gov/publications/0660/).

*New York Public Health Law § 2740. Traumatic brain injury program.*
*"The department shall have the central responsibility for administering the provisions of this article and otherwise coordinating the state's policies with respect to traumatic brain injury, in consultation with the office of mental retardation and developmental disabilities, the office of mental health, the department of education, the office of alcoholism and substance abuse services, the department of social services, the office of the advocate for the disabled and the commission on quality of care for the mentally disabled."*

**Atherton 'Liberty' Complaint in New York State**

**New York State TBI - Department of Health Services - Statistics of Incidence in New York State**
- Nearly 400 incidents of traumatic brain injury occur daily in New York State, resulting in emergency room treatment or inpatient hospitalization.
- Each year, TBIs result in more than 2,000 deaths, 19,000 hospitalizations, and over 112,000 emergency department visits among New York State residents.
- The leading causes of TBI continue to be falls, **motor vehicle crashes,** and assaults."

## F) New York State Traumatic Brain Injury (TBI) Waiver Program.

### Traumatic Brain Injury Waiver

- One component of a comprehensive strategy developed by the NYS Department of Health to prevent unnecessary entrances into nursing homes and to help individuals leave nursing homes to live in the community

- Provides 11 Medicaid-funded services needed to assist participants to **live in community**-based settings and achieve maximum independence; services are used in combination with existing Medicaid services

- Participants may be eligible for rent subsidies and housing supports and limited one-time payment for furniture and household supplies.

- Each recipient must be given the choice of living in the community or in a nursing facility, and – if choosing the community – a living arrangement that can meet his or her needs.

G) PATBI - Protection and Advocacy for Traumatic Brain Injury Disabled Persons in New York State.
"Ensure that individuals with Traumatic Brain Injury (TBI) will be afforded meaningful access to the New York State TBI Waiver program, Nursing Home Transition and Diversion (NHTD) Waiver, and other supports and services.

NY State PATBI clients *"are individuals a with acquired or traumatic brain injury."* Advocate for individuals with TBI who are unnecessarily institutionalized, including out-of-state nursing facilities; Advocate for access to appropriate supports and services, particularly when denial is due to behaviors associated with TBI."
### Priority I
- Advocate for individuals with TBI who are unnecessarily institutionalized, including out-of-state nursing facilities;
- Advocate for access to appropriate supports and services, particularly when denial is due to behaviors associated with TBI;
- Advocate for individuals with TBI who are dually diagnosed and eligible for other waivers to receive cross-system services and supports;
- Monitor the transition of waiver services to a Medicaid Managed Care system.
### Priority II
a. Conduct outreach, education and provide technical assistance to ensure that individuals, including individuals in underserved communities, throughout New York State know about DRNY, the P&A system, and can access appropriate services for individual with TBI
- Provide training, create publications and conduct outreach to clients, advocacy groups, judges, providers and policy makers;
- Conduct outreach on the P&A system and DRNY throughout New York State and identify barriers to underserved communities.
### *Patients and Advocacy for Assistive Technology*
### Priority IV
- Conduct outreach and provide education and technical assistance to ensure that individuals with disabilities, families, advocacy groups, providers and policy makers, including underserved communities, throughout New York State know about DRNY, the P&A system, the PAAT program,

and the rights of individuals with disabilities to access AT.
**Objectives**
- Identify and address systemic barriers to obtaining AT with specific focus on underserved communities including Veterans with AT needs.
- Educate and provide technical assistance to individuals with disabilities, families, providers, vendors, school personnel, advocacy groups and policy makers about the use of AT to improve access to independent living, school and post-secondary learning or employment;
- Conduct outreach about the P&A system, the PAAT program, and the rights of individuals with disabilities to access AT.

**III) Weill Cornell Hospital/NY Presbyterian White Plains Hospital Admission Guidelines according to Federal and State Medical Guidelines discriminating against Ms. Atherton's Traumatic Brain Injury (TBI)**

In New York State ʻMental Healthʼ services are to be rendered to "mentally ill' either in a community setting as out-patient, or ʻAcute Hospital in-patientʼ residential setting. *New York Mental Hygiene Law § 5.07 Establishment of statewide comprehensive plans of services for persons with mental disabilities*[7] Acute Hospital in-patientʼ for Mental Health Services are defined: *CHAPTER XIII. OFFICE OF MENTAL HEALTH PART 587.14 CRR-NY 587.13NY-CRR "(a) An intensive psychiatric rehabilitation treatment program is time limited… (b)(1) a designated mental illness diagnosis; (2) a dysfunction due to mental illness which is likely to continue for a prolonged time; (3) readiness to participate in a designated intensive psychiatric rehabilitation treatment program; and (4) referral by a licensed practitioner."…(h)The provider of service of an intensive psychiatric rehabilitation treatment program shall develop a plan for assuring continuity of care within the mental health system and other service systems (e.g., social services, health care, local correctional systems). Such plan shall be subject to approval by the Office of Mental Health. (i) Admission to an intensive psychiatric rehabilitation treatment program shall occur within the first three visits."*

**A) Mental Health Treatment**

Ms. Atherton's admission to NY Presbyterian White Plains Hospital was not time limited. She was given a FALSE 'mental health' diagnosis. Ms. Atherton had no 'mental illness' likely to continue for a prolonged time. The designated intensive rehabilitation treatment program has a pecuniary interest from the referring licensed provider with a conflict of interest. At St. Vincent Hospital there was never a "Treatment Plan" developed. The presumption is a person referred to an intensive rehabilitation treatment program has had prior history seeking mental health services on an 'outpatient' basis. Ms. Atherton NEVER sought 'Mental Health' services from any provider, and it would be against her religious beliefs to do so under Scientology. To protect the residents of New York State, the *14 CRR-NY 587.13NY-CR*R requires at least 3 visits on an ʻout-patientʼ basis to remove the possibility of abuse of psychiatric authority resulting in involuntary punishment in the name of Mental Health.

New York State offers 'Mental Health Treatment' in 'outpatient' clinic settings, which includes 'Crisis Intervention' for people with a psychiatric emergency. This means that even if a 'Mental Health' diagnosis were valid for Ms. Atherton, there was no reason for St. Jospeh Medical Center to refer her to St. Vincent Hospital for 'in-patient' psychiatric care. *NY-CRR § 599.7 Rights of recipients. "(3) Participation in treatment in a clinic program is voluntary and recipients are presumed to have the capacity to consent to such treatment. The right to participate voluntarily in and to consent to treatment shall be limited only pursuant to a court order or in accordance with applicable provisions of law."*

Once Ms. Atherton was admitted to NY Presbyterian White Plains Hospital she was placed on a regimen that had nothing to do with her actual medical condition of 'Traumatic Brain Injury'. As discussed in Section _____ 'Medical Torture' there is little improvement in the treatment administered. According to *NY-CRR § 599.3 Applicability. (s) Evidence-based treatment* means an intervention for which there is consistent scientific evidence demonstrating improved recipient outcomes. Consequently, Dr. Stabinsky and Weill Cornell Hospital/St. Vincent Hospital broke the law with this treatment procedure.

**Atherton 'Liberty' Complaint in New York State**

**B) Traumatic Brain Injury Disability**

"Mental Health" services are NOT rendered to a patients who is disabled for other reasons than 'Mental Health'. New York State protects persons with a 'Mental Disability' span mental illness, mental retardation, developmental disability, substance dependence, and neurological impairment. Persons protected under American's with Disability Act of 1990 are recognized under New York Law as a protected 'Intellectual Disability' – Acquired or **Traumatic Brain Injury as neurological impairments.**

Ms. Atherton's CIVIL RIGHTS for Disabled Persons Rights, Traumatic Brain Injury Disability Rights, and Americans with Disabilities Act 1990 were denied when Ms. Atherton was forced into 'Mental Health' treatment with Weil Cornell Hospital/ NY Presbyterian White Plains Hospital. As demonstrated in Section II – Definitions of Mental Illness and Traumatic Brain Injury. Ms. Atherton doe NOT fit the New York State definition of 'Mental Illness'. Ms. Atherton does have a qualified New York State Disability – protected under State and Federal disability rights as an 'Intellectual Disability"; a neurological impairment due to Traumatic Brain Injury.

'Post-Acute' phase for a Traumatic Brain Injury - the condition is treated on and 'outpatient services' basis through Neuropsychologists. Neuropychologists are found in Private Practice, and in Hospitals. It is the Teaching Hospitals who have Neurolpsychologists on staff. New York City has the greatest number of teaching hospitals in the country, which accept MEDICAID insurance. Ms. Atherton is a MEDICAID recipient in New York City to obtain Traumatic Brain Injury Evaluation. Weill Cornell Hospital is in the center of New York City. The understanding of Traumatic Brain Injury at presentation should have been apparent to Weil Cornell Hospital medical personnel given the proximity of Advanced Research for Traumatic Brain Injury care in New York City. Ms. Atherton had an appointment with Weill Cornell Neuropsychologist for TBI evaluation Ms. Atherton should have been released at Admission assessment and returned to her pursuit of Traumatic Brain Injury care in New York City.

C) Disregard of Medical Standard to evaluate Traumatic Brain Injury Condition.

The Ranchos Los Amigos Scale evaluates symptomology of Traumatic Brain Injury from mild, moderate, to severe.

a) The Ranchos Los Amigos Scale Traumatic Brain Injury (TBI) evaluation ranks the emotional and social problems. All Traumatic Brain Injury survivors experience heightened emotional liability. 'crying on the street' is a typical condition for someone with a Traumatic Brain Injury. One must examine past the original presentations to understand the emotional trail of someone with a Traumatic Brain Injury. This emotional variation cannot be treated by pharmaceuticals. Anger is part of the TBI matrix and healing process. All TBI survivors experience heightened sense of anger. This cannot be treated by drugs, and could be facilitated in Group Therapy with other TBI survivors for anger management control. Emotional control could be facilitated in Group Therapy (such as C.R.A.T.E.R.– see http://tbira.org/Emotional/Treatments) with other Traumatic Brain Injured survivors. The Brain Injury Association of America lists Certified Brain Injury Therapists who use this Rancho Los Amigos Scale to measure the recovery experienced by the patient. A chemical mask is applied when utilizing pharmaceuticals prohibiting trained Traumatic Brain Injury professionals from interacting with and recording the progress by the Traumatic Brain Injury survivor.

b) *The Ranchos Los Amigos Scale shows that fatigue problems are typical with the nature of Ms. Atherton's injuries.*

New York City Police failed to understand fatigue and 'resting' are part of Traumatic Brain Injury symptomology. In NY Presbyterian White Plains Hospital Ms. Atherton continued to rest.

c) The Ranchos Los Amigos Scale shows that acoustic sensitivity (loud sounds) are typical with the nature of Ms. Atherton's injuries.

Ms. Atherton was upset in a business area of New York City, she found helrself in a large city, with her task required to be repeated, under sensory assault. Sensory impairment is never cited as Mental Illness. Mental Illness is a chemical imbalance, or degenerative condition, that impairs neurological activity.

IV) Weil Cornell Hospital/ NY Presbyterian White Plains Hospital applied 'Mental Health Evaluation' instead of Traumatic Brain Injury (TBI) at Admission and Discharge violating Federal Disability Law. Americans with Disabilities Act 1990.

## A) Admission Weill Cornell Hospital 12/9/2015

Ms. Atherton presented at Weil Cornell Hospital in New York City, NY – admitted to the Psych Ward Emergency Room. Ms. Atherton protested that she did not want any medical treatment. She stated that she was only 'crying' while sitting at the planter bench. Ms. Atherton has a documentable Traumatic Brain Injury disability, and suffers from fatigue, which is why she was resting. Ms. Atherton told the intake person at the Weill Cornell Hospital she has Traumatic Brain Injury disability – medical staff ignored her statements. Though, she is protected under (Americans with Disabilities Act 1990) Americans with Disabilities Act of 1990 - she is now in the domain of the Weill Cornell Hospital ER Psych-ward. This means the Psychiatric physicians deal with the mind and behavior, they believe they are in charge of anything to do with the brain. Once admitted, these physicians were in control of Ms. Atherton.

As is customary an 'intake history' should be performed prior to administering medication or determining treatment. No intake history was performed. No questions were asked of Ms. Atherton. Ms. Atherton asks the United States District Court of Northern Illinois what 'ordinary emotions of crying' have to do with 'her brain' and a supposition of 'mental illness', or being 'psychotic' for which she was being evaluated? Ms. Atherton recalls being asked for labs. She wanted 'no labwork' performed. Ms. Atherton was told she was going to receive an 'intramuscular injection' to calm her down. Ms. Atherton did not want to receive an IM. All of this was catapulting astray by the police report, the EMT notes, and intake physician's who need evidence of 'mental illness' to admit Ms. Atherton and 'do their jobs.'

Though, Ms. Atherton made no statements to New York City Police, or to any of the Health Care Workers of 'Danger to self", 'Danger to others', or demonstrable "Unable to care for self". Weil Cornell Hospital chose to admit Ms. Atherton for observation and treatment at NY Presbyterian White Plains Hospital a subsidiary of Weil Cornell Hospital.

## B) Admission NY Presbyterian White Plains Hospital 12/11/2015

Ms. Atherton was brought to NY Presbyterian White Plains Hospital via EMT van transport, seated and helped down by attending staff. Ms. Atherton walked to the admission area of the Adult Psychiatric Unit. At Admission Ms. Atherton was requested to sign 'consent to treatment' Ms. Atherton refused to sign. Ms. Atherton wanted NO MENTAL HEALTH TREATMENT. NY Presbyterian White Plains Hospital failed in their admission guidelines to consider all of Ms. Atherton's statements of being an 'innocent consumer' at Au Bon Pain in New York City.. NY Presbyterian White Plains Hospital saw Ms. Atherton as a 'mentally ill' person only, ignoring her statements that she was 'upset' from her Traumatic Brain Injury and failing to get the protection order.

NY Presbyterian White Plains Hospital violated Ms. Atherton's 'intellectual disability' accepting her for care in their facility: discriminating on her poverty, and the fact she was alone with no companions to vouch for her. There was a continuous disregard of Ms. Atherton's Intelligence, need to safeguard the 'cognitive functioning' of her brain. Ms. Atherton was treated as an economic unit - taking advantage of her poverty, and forced into MEDICAID treatment as a 'mental health' patient.

Weill Cornell Hospital broke *NY Public Health Law 45 § 2983*[8] by creating a paper trail in absence of fact that there was NO EVIDENCE of MENTAL ILLNESS for Ms. Atherton. It is this opinion from an attending physician in Weil Cornell Hospital that allowed Ms. Atherton to be admitted to NY Presbyterian White Plains Hospital. Using the presumption from a licensed psychiatrist that Ms. Atherton 'lacked capacity' under a diagnosis of 'paranoid-schizophrenic' she lost her civil rights, her liberty, and her protection under Americans with Disabilities Act 1990 for her Traumatic Brain Injury.

This repeated moral crime of taking advantage of the social slippage of Ms. Atherton's Frontal Lobe Injury in order to enrich the NY Presbyterian White Plains Hospital who secured FEDERAL HEALTH CARE PAYMENTS has continues based on the 'long term commitment' history from the original 'Brain Injury for the Poor'. NY Presbyterian White Plains Hospital psychiatrist ignored Ms. Atherton'sstatements about pretection orders or that she was falsely accused of 'hitting' someone. Lack of oversight by Office of Inspector General of the State of New York

**Atherton 'Liberty' Complaint in New York State**

and Joint Commission would allow NY Presbyterian White Plains Hospital to FASLEY INPRISON Ms. Atherton, depriving her of 'Constitutional Rights (*Katz v. Rivers)*; They were free to abuse, mistreat, and exploit her physically, medically, psychologically, emotionally, and socially.

Ms. Atherton is a single, white, and a professional female. - 53% of women in the United States of America of America are head of household with or without children. There are numerous citations defining a 'disabled person' in the State of New York. Ms. Atherton meets all the criteria for the physical disability – Traumatic Brain Injury disability. Disabilities include: Sensory, Social Skills, Skeletal, and Systemic due to her injuries in the 1/7/2011 Auto-Accident. Weill Cornell Hospital/ NY Presbyterian White Plains Hospital discriminated against Ms. Atherton due to her age, single status, lack of children, and no 'relationship' support. These are poor reasons to have the Westchester County Mental Health Court 'forced commit' Ms. Atherton. This is against Constitutional Rights regardless if there is a doctor's signature next to the diagnosis. There was absolutely NO EVIDENCE of 'Mental Illness' based on Weill Cornell Hospital/ NY Presbyterian White Plains Hospital medical records that apply to the definition of New York State **'Mental Illness'.**

**C) Discharge Well Cornell Hospital 12/11/2015**
Ms. Atherton was discharged to NY Presbyterian White Plains Hospital, Ms. Atherton placed in a medical transport van EMT vehicle for admission. Ms. Atherton waited over 2 hours before being admitted to NY Presbyterian White Plains Hospital/

**D) Discharge NY Presbyterian White Plains Hospital 2/2/2015**
Ms. Atherton had asked her attending physician for a discharge from the time she arrived in the facility. NY Presbyterian White Plains Hospital disregarded Ms. Atherton's desire to be returned to the community. Ms. Atherton had been spending the last 2 weeks documenting the admission and stating the 3rd party call to the police that resulted in her admission. It was Ms. Atherton who stated the present 'commitment' period was nothing more than MEDICIAID FRAUD. Shortly after that the Attending Physician wanted no part of 'medicaid fraud' and allowed her release. This was coordinated with the social worker NY Presbyterian White Plains Hospital stated they wanted a 'safe' discharge and would only discharge Ms. Atherton to an institution, who allowed the release to a homeless shelter. The 'forced commitment' at NY Presbyterian White Plains Hospital follows the same pattern of Police Admission, false diagnosis, 'warehousing', and eventual release after damage has been done to the New Mexico Personal Injury Case. Ms. Atherton was released to her own recognitive.

**V) Weill Cornell Hospital/St. Vincent violated New York State Office of Mental Health Services Admittance Regulations for LEGAL CRITERIA "Public Safety"– Danger/Mental Health/Care for Self".**
Judge Emmett J. Murphy violated the Disabilities Rights of New York State for Ms. Atherton to have Traumatic Brain Injury care. He agreed with Weill Cornell Hospital/ NY Presbyterian White Plains Hospital's medical argument of 'paranoid- schizophrenic'. Police found Ms. Atherton found alone – no companions (no witnesses) in New York City. Weill Cornell Hospital psychiatric assessment favored 'serious mental illness'.

The key requirement for retention of a mental health admission contained in *section 9.37 of the Mental Hygiene Law*, is 1) danger to self; 2) danger to others; 3) unable to care for self.

> *Danger to Self* - substantial risk of physical harm to himself as manifested by threats of or attempts at Suicide, or serious bodily harm or other conduct demonstrating that s/he is dangerous to himself. Ms. Atherton never expressed any comments for self-harm. Therefore, Ms. Atherton was not a danger to Self.

> *Danger to Others* - a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear or serious physical harm. This is the 'public safety' argument made to detain people. "Ms. Atherton has never been violent. Ms. Atherton had uttered 'no words' that indicated a threat to other people, to property, or to the community. Ms. Atherton was not a danger to others.

*Unable to care for self* – Ms. Atherton was a 'tourist' in New York City – just as she was a 'tourist'when she was in the auto accident that caused the Traumatic Brain Injury. Ms. Atherton was able to care for herself since the accident

as evidenced by CHRISTUS St. Vincent Regional Hospital discharge for ability to live independently. Ms. Atherton had demonstrated 'self care.' It is the Rivers v. Katz which states that a person cannot be deprived of 'personal liberty' under either the assumption that there is a 'danger' which is not present, or that 'treatment' is available.

According to New York Court of Appeals decision (*Katz v. Rivers),* it is the need for immediate 'in-patient treatment', which justifies deprivation of liberty upon a theory of 'dangerousness'. (See *Goldstein* and *Katz*, Dangerousness and Mental Illness.) Absent such a finding, a dangerous propensity is in itself, insufficient to permit **involuntary commitment**. *MATTER OF TORSNEY (MENTAL HYGIENE), 47 NY 2d 667 - NY: Court of Appeals 1979*

## VI ) Westchester County Mental Health Court Authorized Treatment - Article 31 NY Mental Hygiene Law

Treatment:
### A) Weil Cornell Hospital False Diagnosis

While none of Ms. Atherton's actions fit the category 'Paranoid Schizophrenic' The definition 'Paranoia' is 'imagining someone is after them, conspiring against them, or planning to hurt or injure them'. Definition of Schizophrenic: 'hallucinations – seeing things that are not there, or hearing things that are not there, hearing voices in your head.' The understanding of 3rd party stalking reaches the legislature but not the psychiatrists. It is a call by a concerned citizen who puts the play in motion using New York Police, and their duty to EMT patient.' A protection order is a normal action to take in the Court System to prevent this type of harassment.

It is important to note that there is no conspiracy of actors, there are only separate actors playing a predetermined part. The 3rd party stalking is arranged via a phone call to police alleging an action. The police are summoned following the records from dispatch. This means if a person is alleged to need emotional assistance, the police are better off calling for it and letting a doctor make the decision from withholding it based on sound judgement. The EMT is the transport mechanism and supporting report to the dispatch original call. The ER pych unit decides that should there be more depth there is insufficient time to evaluate the patient and ask for a longer commitment based on the original dispatch call. The longer commitment is a 'self-fulfilling prophecy' as they wait for 'symptoms to manifest' or medication to 'change behavior.' In each case people are only looking for their 'role' or 'job' in the process no overarching rationale that would indicate a lack of justification that they are there. In this era of delivering mental health services to anyone, as a goal to reduce mental illness, the psychiatric community is finding a need to make itself heard.

The fact there was no name, no witness to the call that alleges Ms. Atherton is a danger to others it 1st 'tip off' of the beginning of this case. The fact that Ms. Atherton was rerouted in Court not hearing Atherton's opinion in a 2nd 'tip off'. The refusal of Weill Cornell Hospital medical staff to speak of the incident, hear Ms. Atherton's side of the story is the 3rd 'tip off' that something has gone wrong. Per New York City Police the issue of 'cying in public' can hardly be a paranoid act; nor can sitting on the planter box bench be an 'schizophrenic experience'.

### B) NY Presbyterian White Plains Hospital False Diagnosis

The pretense for admitting Ms. Atherton to NY Presbyterian White Plains Hospital was 1) Paranoid Schizophrenic and 2) Behavioral Problems.

Attending Physician initiated the Petition for "Medication over Objection" submitted to Westchester County Mental Health Court 9th Fl. Attending Physician is a strong believer in a continued medicated state for 'mentally ill patients'. His patients seem to have experienced repeat admissions to the hospital per the patient population at NY Presbyterian White Plains Hospital. Ms. Atherton considered whether the "Medication over Objection" was a repeat performance in the same court as St.Jospeh's Medical Center/St..Vincent's Hospital and access to Mental Hygiene Lawyer provided by New York State. Continued to coach Ms. Atherton on the dangers of the drugs prescribed.

Admitting Physician led to the psychiatric LABEL of 'Paranoid Schizophrenic'. Attending Physician relied on his experience and past practice of pharmaceutical alteration of the brain's chemistry. Ms.

**Atherton 'Liberty' Complaint in New York State**

Atherton did protest against her 'forced commitment' as well as inability to use the phone to call a Mental Hygiene lawyer. Ms. Atherton's protests were 'anger' based not 'paranoid' based.

Approximately 100,000 people in the United States experience an episode of psychosis each year, according to the National Alliance on Mental Illness. (2) Psychosis is a break with reality that can involve paranoia, hearing voices, or having other hallucinations or delusional thoughts. **Thus, it is a RARE Occurrence for a patient to present with these legitimate symptoms.** https://www.everydayhealth.com/schizophrenia/guide/treatment/

**C) Pharmaceutical Treatment**

Attending Physician created a list of apx 3 pharmaceuticals to submit to the Westchester County New York Supreme Court for approval. These drugs are not to be taken lightly. This is an overview of problems associated with the administration of the drug. Specific side effects and contraindications are listed under MALPRACTICE page 43. When a person is NOT MENTALLY ILL, the justification of administration of a drug of such potency and destruction cannot be accepted.

The first drug on the list of 3 is Haldol. This was administered daily dosage via Intramuscular Injections. Ms. Atherton protested against these injections due to her religious beliefs in Scientology. Scientology prohibits the use of psychotropic drugs by its participants engaged in 'auditing process' a practice used to address emotional and spiritual issues. Ms. Atherton wrote daily objections to the administration of this drug.

1) Haldol - *Haloperidol* The primary administration of a pharmaceutical is Haldol - 50 mg. This is an anti-psychotic. Haloperidol is a traditional or conventional antipsychotic used to treat mania and other forms of psychosis. It is a derivative of butyrophenone and it acts by blocking the effects of dopamine, a chemical in the brain that affects thinking, behavior and feelings.

*a) Side effects of HALDOL.*

"Haldol (haloperidol) is an antipsychotic drug that decreases excitement in the brain. Haldol is used to treat psychotic disorders like schizophrenia, to control motor (movement) and verbal (for example, Tourette's syndrome) tics...Haldol is not approved for use in older adults with dementia. because of increased chances of death during treatment. Common side effects of Haldol include nausea, vomiting, diarrhea, dry mouth, nervousness, headache, dizziness, spinning sensation, drowsiness, sleep problems (insomnia), restlessness, anxiety, skin rash, itching, spontaneous eye movements, mood changes, breast enlargement, irregular menstrual periods, loss of interest in sex, blurred vision, difficulty urinating or urinating less than usual, and occasional movement disorders. Severe side effects of Haldol include death in the elderly, prolongation of the QT heartbeat interval, tardive dyskinesia (involuntary movements), a symptom complex sometimes referred to as neuroleptic malignant syndrome (NMS) with fever, irregular heartbeats, mental status changes, and renal failure."

2) Zyprexa- *Olanzapine* is used to treat certain mental/mood conditions (such as anxiety, bipolar disorder). It may also be used in combination with other medication to treat depression. This medication can help to decrease anxiety and help you to think more clearly and positively about yourself, feel less agitated, and take a more active part in everyday life. (https://www.webmd.com/drugs/2/drug-1699/zyprexa-oral/details)

*a) SIDE EFFECTS of Zyprexa*

- very stiff (rigid) muscles, high fever, tremors, sweating, confusion, fast or uneven heartbeats, slow heart rate, feeling like you might pass out;
- twitching or uncontrollable movements of your eyes, lips, tongue, face, arms, or legs;
- trouble speaking or swallowing;
- dry mouth, thirst, feeling very hot (with or without sweating), urinating less than usual or not at all;

- high blood sugar (increased thirst, loss of appetite, fruity breath odor, increased urination, drowsiness, dry skin, nausea, and vomiting);
- sudden numbness or weakness, confusion, or problems with vision, speech, or balance;
- fever, chills, body aches, flu symptoms, sores in your mouth and throat;
- swelling in your hands or feet;
- changes in personality, unusual thoughts or behavior, hallucinations, or thoughts about hurting yourself;
- upper stomach pain, itching, loss of appetite, dark urine, clay-colored stools, jaundice (yellowing of the skin or eyes).


LESS SERIOUS SIDE EFFECTS of Zyprexa

- weight gain (more likely in teenagers), increased appetite;
- headache, dizziness, drowsiness, feeling tired or restless;
- memory problems;
- stomach pain, constipation, loss of bladder control;
- back pain, pain in your arms or legs;
- numbness or tingly feeling;
- breast swelling or discharge (in women or men); or
- missed menstrual periods.

Actual side effects experienced by Ms. Atherton are in MALPRACTICE SECTION – Pg43.

## D) Impact of Weill Cornell Hospital/St.Vincent's Hospital to Legal Case creating the Traumatic Brain Injury.

Attending Physician of NY Presbyterian White Plains Hospital who has labeled Ms. Atherton as 'psychotic', 'paranoid', 'schizophrenic' in need of psychotropic drugs. These LABELS by Attending physician has impacted Ms. Atherton's: lawsuit in Personal Injury Recovery ability to testify. At the 9/8/2015 'Hearing to Dismiss the Personal Injury Case', Donavon Roberts testified that Ms. Atherton had been released from a Domestic Violence Shelter, but the Domestic Violence had nothing to do with the Personal Injury Case. This is the core of the 3rd party stalking is the New Mexico Personal Injury case, designed to recharacterise Ms. Atherton and destroy evidence of traumatic brain injury.

This approach by Attending Physician has done Ms. Atherton irreparable harm profiling Ms. Atherton as gravely 'mentally ill'. In fact, Ms. Atherton has NO MENTAL ILNESS only a Traumatic Brain Injury DISABILITY per her neuroevaluations performed 3/2012, and 3/2915. The 'forced commitment' and 'medication over objection' has prevented Ms. Atherton's access to medical care, Traumatic Brain Injury Rehabilitation, employment possibilities, FSOT exam, access to legal resources.


## VII) Weill Cornell Hospital/NY Presbyterian White Plains Hospital failing to regard Federal Code for 'Independent Living' under Americans with Disability Act-1990, and New York State Law.

## A) Legislation to support people with Disabilities for Independent Living.
### FEDERAL
- **U.S.C. Title 29 § 51.5-162. ARTICLE 10 - Independent living services**
Independent living services provided pursuant to this article shall be provided in accordance with the Federal Rehabilitation Act of 1973 (29 U.S.C. § 701 et seq.), as amended. "5.Services that (i) facilitate the transition of individuals with significant disabilities from nursing homes and other institutions to home and community-based residences with the requisite supports and services, (ii) provide assistance to individuals with

**Atherton 'Liberty' Complaint in New York State**

significant disabilities who are at risk of entering institutions so that the individuals may remain in the community, ..."

- Rehabilitation Act of 1973, 29 U.S.C. § 794.

**STATE**

- ***State of New York Disability Rights*** "A disability is defined as a past or present physical or mental impairment that substantially limits or has limited one or more major life activities".

- ***State of New York PATBI*** clients "are individuals a with acquired or traumatic brain injury." PATBI is an Advocate for individuals with TBI who are unnecessarily institutionalized, including out-of-state nursing facilities; Advocate for access to appropriate supports and services, particularly when denial is due to behaviors associated with TBI.

- ***State of NY ACCESS-VR*** - **"Independent Living Centers** (ILCs) provide an array of services that assist New Yorkers with all disabilities to live fully integrated and self-directed lives. ILCs assist with all aspects of living, learning and earning.

- ***New York State Association- Centers for Independent Living***
  Statewide, not for profit membership association of Independent Living Centers.
  - ILCs are unique disability led, cross disability, locally administered not for profit organizations, providing advocacy and supports to assist people with disabilities of all ages to live independently and fully integrated in their communities. Independent Living in New York
  - ILCs have been transitioning and diverting people from institutions for more than 20 years.
  - ILCs are RRDCs for NHTD/TBI waivers as well as providers of services.
  - ILCs are fiscal intermediaries for CDPAS program. • Six ILCs are regional lead for Ombudsman Program.
    - ☐ Goal: Identify potential participants in nursing facilities, developmental centers and intermediate care facilities and Peers will approximate the characteristics of the individuals (age, physical and/or developmental disability)•

- ***NY State ACCESS-VR*** - **"Independent Living Centers"** provide an array of services that assist New Yorkers with all disabilities to live fully integrated and self-directed lives. ILCs assist with all aspects of living, learning and earning. They identify and facilitate removal of architectural, communication and attitudinal barriers to full participation in local communities and beyond."

B) Eligible for Independent Living- New York State "Intellectual Disability"– Independent Living ADA-1990 compliance.

Ms. Atherton had documented subdural hematoma (internal bleeding in the brain; closed head injury Traumatic Brain Injury from the Santa Fe Accident and was released by CHRISTUS St. Vincent Regional Medical Center as able for 'independent living'1/21/2011. Ms. Atherton was denied TBI Rehabilitation and Physical Therapy as in-patient at UNM and CHRISTUS St. Vincent Regional Medical Center. The denial of care led her to the east coast where she was seeking Traumatic Brain Injury Services in New York City.

Ms. Atherton Traumatic Brain Injury is recognized as an "intellectual disability" as such Ms. Atherton is protected by law to live independently in society as a member of the community. Ms. Atherton's rights were violated at the Federal Level Americans with Disabilities Act 1990, and at the State level with Traumatic Brain Injury Waiver .*Traumatic Brain Injury Waiver - Per Brain Injury Action Plan New York - 2009-2013*

C) **FAIR HOUSING.** *Title VII of the Civil Rights act of 1968.*
*"The act defines persons with a disability to mean those individuals with mental or physical impairments that substantially limit one or major life activities".*

D) **'Mental Illness diagnosis' removes access for Traumatic Brain Injury Services.**
Through the insistence of a 'mental illness' diagnosis of psychotic by ATtending Physician, Weill Cornell Hospital/NY Presbyterian White Plains Hospital disregards Ms. Atherton's Traumatic Brain Injury disability status.

Weill Cornell Hospital/NY Presbyterian White Plains Hospital disregarded New York State Policies preferring instead to trap Ms. Atherton in the Mental Health System of Westchester County, and **malevolently** deny Ms. Atherton Traumatic Brain Injury medical care: Permanently damaging her brain. Ms. Atherton was tested by neuropsychologist 2/2012 and 3/2015 both show NO INDICATION of 'mental illness', only a validation of Traumatic Brain Injury to the Frontal Lobe & Occipital lobe; Most impairment were in the Executive Function. Weill Cornell Hospital/NY Presbyterian White Plains Hospital Traumatic Brain Injury rehabilitation; Memory Training Exercise; Cognitive Rehabilitation; Skills in Executive Functioning rejuvenation; and Coping skills as a TBI Survivor. Ms. Atherton continues to be disabled, and will be so for life with a permanent injury. It was Ms. Atherton's desire to concentrate on her strengths and skill sets then resume a productive place in society, recapitalizing on past achievements. Ms. Atherton came to New York City 2 months earlier for her search for Traumatic Brain Injury specialists only to find herself 'forcibly committed' to Weill Cornell Hospital/NY Presbyterian White Plains Hospital as a 'mental health patient'

Institutions in New York have had prior experience with discrimination against 'intellectual disabilities'. Weill Cornell Hospital/NY Presbyterian White Plains Hospital emphasis is with 'mental health disabilities'. There is a predisposition of community implementation of 'mental health services' compared to 'intellectually disabled services' as evidenced by New York State is was part of the July 23, 2013 settlement agreement with DOJ United States of America of America illegally retaining 'intellectual disabled adults' in 'institutions' operated by Department of Health Services of the State of New York. Department of Justice found violation with the New York's compliance with the American Disabilities Act 1990 *DOJ U.S. v. New York – 13-cv-4165[9] – (E.D.N.Y. 2013)* On July 23, 2013, the United States of America of America, individual plaintiffs, and the State of New York filed a settlement agreement in the U.S. District Court for the Eastern District of New York.

**E) New York State allows for Traumatic Brain Injury Disabled persons to access services in the Community on an outpatient basis.**

Under the definition of disability, and the plethora of Traumatic Brain Injury services made available to New Yorkers. Section II Definitions and Programs for Neurological disorders. It is Weill Cornell Hospital/ NY Presbyterian White Plains Hospital who is EVADING New York State's 'intellectual disability' protection and American's with Disabilities Act of 1990. The New York State Traumatic Brain Injury Waiver of 2005 allows for an individual to 'live in the community'. Beyond the disability rights, New York State has 'mental illness care provided in the community', Weill Cornell Hospital/St. Vincent's forced Ms. Atherton into an institutionalized setting.

**F) Ms. Atherton was living independently prior to 'forced commitment' with Weill Cornell Hospital/NY Presbyterian White Plains Hospital.**

Ms. Atherton was searching to Traumatic Brain Injury Care in New York City when she was 'force committed' to Weill Cornell Hospital/NY Presbyterian White Plains Hospital. Under Attending Physician supervision there was no personal evaluation of Ms. Atherton's needs or disability requirements. Ms. Atherton had been independent since she left New Mexico – location of the Personal Injury accident. She fled Virginia after the 2014 'long term commitment'. Arriving in Washington D.C. to obtain Traumatic Brain Injury Rehabilitation. With the understanding that there was no Neuropsych taking MEDICAID coverage on staff at Teaching Hospitals, Ms. Atherton departed Washington D.C.

**G) New York State Independent Living allows for resumption of employment/vocation.**

Ms. Atherton was studying to take a FSOT with the State Department, which would have allowed her employment with Federal accommodations for her Traumatic Brain Injury. Ms. Atherton was one of 4% eligible candidates in the USA. Ms. Atherton had a path to recovery from the 1/7/2011 auto accident - this has been continually interrupted by 'forcible commitments' and classification as 'mentally ill' instead of a Traumatic Brain Injury disability. In other words, sitting in the middle of suburban New York City Metro with Psychiatrists who have never treated Traumatic Brain Injury – specialists in Mental Health – Weill Cornell Hospital /NY Presbyterian White Plains Hospital could not comprehend Ms. Atherton's accomplishments and lifestyle. Weill Cornell Hospital /NY Presbyterian White Plains Hospital was her failing to understand she has achieved success as a female in technology. forcing her to live

**Atherton 'Liberty' Complaint in New York State**

according to standards of a married with children village in Hasting on Hudson, or the low income of Yonkers, NY; an uneducated, unrefined, devoid of any social, economic, education, or political fertile ground for Ms. Atherton to regain her life.

With these violations in providing TBI services for Ms. Atherton- there was no way Ms. Atherton could participate in social and economic life of the New York State. Ms. Atherton is allowed to participate in the 'community' as 'independent living' and Weill Cornell Hospital /NY Presbyterian White Plains Hospital utilized her to defraud the United States of America of America Medicaid Health Care Program.

VIII) **Ms. Atherton meets the New York Traumatic Brain Injury Disability definition and Proof of Injury.**
New York Traumatic Brain Injury Disability definition: a mental impairment, neurological impairment.
*Proof of Injury:*
   1) Sensory Disability
      a) Through social cues undetected, and improper understanding of social environments.
      b) 'Mental impairment' unable to maintain concentration on a task when there are disruptions.
   2) Physical Impairment by the following
      a) Systemic variation from the Traumatic Brain Injury causing 'fatigue', requiring Ms. Atherton to sleep long hours 12-16, or take naps after mental stress.
      b) Kidney function: requiring frequent urination, and protection from leakage.
      c) Skeletal disfigurement, and distortion impairing walking, running, and weight-bearing from the 'pelvic fractures', knee, and foot injuries.
      d) Facial scars from the traumatic impact of head injuries, scars on her knees from the serious abrasions from the accident.
      e) Balance and weight bearing, knee and foot difficulties Trouble with squatting, rotational agility, and muscular strength. This affects her documentary photography where she must move quickly and change levels for the action of the event she is recording.
      f) Ms. Atherton has had continual problem with working with people in society - who fail to understand she retains her intelligence from cognitive reserve. These same people take advantage of her emotional naiveté due to the frontal lobe injury failing to understand social cues.
   3) Vocational impairment
      a) Ms. Atherton has been deselected in employment arena, unable to return to her profession. She has a problem with an employer's inability to deal with her variability and weaknesses. The accident has impaired all aspects of Ms. Atherton's earning capacity. The accident took place on the 1/7 /2011 by Robert M. Chapman/ HARTFORD INSURANCE Company/Santa Fe Hardware Inc./ Santa Fe Trails - et al.
   4) Intellectual Impairment
      a) Ms. Atherton had an IQ of 130 before the accident. Ms. Atherton was tested 3/2015 and her IQ was only 106. Ms. Atherton has spent her life in the 'gifted' category. She has been above average in all aspects of her life, education - IVY, career - entrepreneur, social - world consultant. Ms. Atherton scores in the 'normal range', but claims the inattention to her 'aftercare' for TBI leaves her permanently damaged and crippled from her former life - as superior. Studies show the 1st two years in TBI healing recover the most skills. Ms. Atherton was denied by Weill Cornell Hospital/NY Presbyterian White Plains Hospital these procedures she obtained in New York City. These would have accelerated her healing and recovery hoping to reclaim her vibrant life as an international consultant, the very reason she came to New York City.

IX) Weill Cornell Hospital/ St. Vincent Hospital violated State & Federal Guidelines for Admission and Discharge.
**A) New York State Hospitals.**
The key to this Compliant is the understanding that because persons acted in their role as civil servants, had a paper trail, hold a certificate or license it does not MEAN they DISCHARGED THIER DUTY according to the law that protects a persons CIVIL RIGHTS, DISABILITY RIGHTS, RIGHTS TO LIBERTY, and RIGHTS to Medical Care and services

available in the Community as afforded by ADA 1990, New York Bill or Rights for Disabled Persons, and New York State TBI waiver of services in an institution.

Weil Cornell Hospital admitted Ms. Atherton on a Temporary Detaining Orders *New York Mental Hygiene Law § 9.40 Emergency observation, care and treatment in comprehensive psychiatric emergency programs*[10] from New York City Police department. They referred an 'involuntary admission' to NY Presbyterian White Plains Hospital for psychiatric treatment, though Ms. Atherton had NO EVIDENCE of being mentally ill. According to *New York Mental Hygiene Law § 9.40 ECO (d) If at any time it is determined that the person is no longer in need of immediate observation, care and treatment in accordance with this section and is not in need of involuntary care and treatment in a hospital, such person shall be released without regard to the provisions of section 29.15 of this chapter, unless such person agrees to be admitted to another appropriate hospital as a voluntary or informal patient.* Based on Ms. Atherton's statements that she had a TBI disability not a 'mental illness' this ECO order offers the Weil Cornell Hospital the option to release her back to her own authority. Weil Cornell Hospital according to this law could have allowed Ms. Atherton to be DISCHARGED. *New York Mental Hygiene Law § 9.40 ECO (d) § 29.15 Discharge*[11] Weil Cornell Hospital omitted this understanding of Ms. Atherton's TBI Disability and continued to reclassify her as a 'mentally ill' patient.

*New York Mental Hygiene Law § 9.27 involuntary admission on medical certification*[12]. It is Ms. Atherton's statement that although a medical certificate was filed for involuntary admission - that the diagnosis was FLAWED, INVALID, and DELIBERATELY CREATED to admit Ms. Atherton a MEDICAID recipient to a Private Hospital under the Department of Health of New York State. *§9.27 reasonable cause to believe that the person has a mental illness for which immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm to him/ herself or others. "Likelihood of serious harm" means:*

1. *a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to him/herself (See reverse #6). or*
2. *a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.*

Further, according to *New York Mental Hygiene Law § 9.05 Examining physicians and medical certificates*[13] indicates that the medical admission should be disqualified, as NY Presbyterian White Plains Hospital is a subordinate facility to Weil Cornell Hospital. Weil Cornell Hospital used *New York Mental Hygiene Law § 9.55 Emergency admissions for immediate observation, care and treatment; powers of qualified psychiatrists*[14] as their authority to keep Ms. Atherton' in their custody and claiming 'mental illness' diagnosis 'paranoid – schizophrenic 'there was no self harm expected, or harm to others.

It is this very ABUSE OF POWER that has turned Ms. Atherton from a law-abiding citizen who has a Traumatic Brain Injury disablity into a 'forcibly committed' mentally ill patient. It is Weil Cornell Hospital disregard for neuroevaluations in Ms. Atherton's health records by trained Neuropsychologists that allow this kind of 'INJUSTICE' to take place. Ms. Atherton has committed NO CRIME. She has not been a threat to any person, property, self, or the community. The UNILATERAL AUTHORITY of a psychiatrist to write a diagnosis based on DMS-V codes for billing purposes and to use the name of "SAFETY" to justify FALSE IMPRISONMENT demonstrates that American Citizens are no longer SAFE to walk the streets. If any officer of the Law can look at a person and decide they are undesirable, contact the EMT and have the person removed, then forcibly detained in a Mental Hospital – then we indeed live in a 'police state.' There is no longer FREEDOM of movement, FREEDOM of personal liberty, or FREEDOM to publicly gather. These values have been safeguarded over time by the Courts to prevent the abuse of power by individuals or groups acting to minimize certain citizens.

It is Ms. Atherton's Statement her Traumatic Brain Injury Disability left her vulnerable to the 'mental health community' where she has been deprived of her civil rights. She was falsely imprisoned in NY Presbyterian White Plains Hospital, she lost her FREEDOM of movement, FREEDOM of personal liberty, FREEDOM to publicly gather, FREEDOM to seek appropriate medical care for her TBI Disability, FREEDOM to pursue her life interests, and FREEDOM to re-engage in a profession.

NY Presbyterian White Plains Hospital 'forced commitment' broke the following law:
*New York Mental Hygiene Law § 33.01 Protection of patients' rights*

**Atherton 'Liberty' Complaint in New York State**

*"Notwithstanding any other provision of law, **no person shall be deprived of any civil right,** if in all other respects qualified and eligible, solely by reason of receipt of services for a mental disability nor shall the receipt of such services modify or vary any civil right of any such person, including but not limited to civil service ranking and appointment, the right to register for and to vote at elections, or rights relating to the granting, forfeiture, or denial of a license, permit, privilege, or benefit pursuant to any law."*

Weil Cornell Hospital further overstepped their authority by recommending Ms. Atherton to an "intensive rehabilitation program' at NY Presbyterian White Plains Hospital *14 CRR-NY 587.13 Intensive psychiatric rehabilitation treatment programs.*[15] *The admission presumes that (1) a designated mental illness diagnosis* –[Ms. Atherton had a TBI Disability not a 'mental illness'];*(2) a dysfunction due to mental illness which is likely to continue for a long time;...*" Ms. Atherton TBI Disability is permanent for life. The behavior problems are due to tissue damage by the TBI trauma not mental illness. This disregard of Ms. Atherton's Traumatic Brain Injury Disability is tantamount to medical malpractice to remove her from correct medical intervention and place her in a program understood by the PSYCH WARD psychiatrist.

Once Ms. Atherton arrived at NY Presbyterian White Plains Hospital - there was NO TREATMENT PLAN for her 'supposed mental illness" According to *New York Mental Hygiene Law § 29.13 Treatment plans*[16] "the following persons shall be interviewed and provided an opportunity to actively participate in such preparation or revision: the patient;" Ms. Atherton was never interviewed by any treatment team. She had one meeting with the attending physician, and once he was on vacation Attending Physician took over and created his MEDICATION REGIME to place Ms. Atherton in a drug induced stupor.

There were no plans for treatment, counseling, or other kinds of assessment - Ms. Atherton was not MENTALLY ILL. Therefore, the ONLY RECORD made in NY Presbyterian White Plains Hospital was a DMS-V diagnosis and a related pharmaceutical as a justification of treatment. It is Ms. Atherton's statement that Attending physician used the Westchester County New York Supreme Court System as a ratification of his deception to the US Government for FEDERAL HEALTH CARE PROGRAM Under the cloak of 'consumer safety' – Attending phsysiciain hijacked a legitimately TBI Disabled person from the community and wove the laws into his favor relying upon his Psychiatric credentials to prove to the Westchester Mental Health Court Ms. Atherton needed 'Mental Health' Care. The Judge is not a trained Physician. The Judge is not a Neuropsychologist. The Judge is not a Psychiatrist. The misread of Ms. Atherton's medical condition from a disability due to Traumatic Brain Injury to 'mental illness' is due to the unilateral reliance on the psychiatrist. The issues of the BRAIN, MIND, and BEHAVIOR are NOT the exclusive domains of Psychiatry. A neuropsychologist was never consulted in the admittance process.

Ms. Atherton intends to preserve the record of her 'good reputation' She was a victim of an auto accident, and received a serious head injury that affects her for the remainder of her life. It is her statement that that reclassification of her Traumatic Brain Injury Disability to one of 'mental illness' is a DEFAMATION of her CHARACTER and has had serious repercussions on her ability to recover from the trauma, gain correct medical care, and re-emerge into society as a productive person. *New York Mental Hygiene Law § 33.14*[17] allows Ms. Atherton to protect her good name from an event that is nothing more that FEDERAL HEALTH CARE FRAUD.

**X) New York State Mental Health Institution conformity to Federal Health Care "Medical Necessity" -benchmark for Malpractice Standard.**

New York Medicaid Administration requires that the service or treatment provided meet the United States of America of America Guidelines for MEDICAID 'Medical Necessity' *18 USC 669* . *This means a person cannot be given "in-hospital treatment" unless it is for emergency conditions, medically authorized as 'life saving', there are no comparable services and medical providers available for the patient. It is mandated that the MEDICAID PROVIDER must demonstrate that such treatment is a 'medical necessity'.* Federal Programs for Health Care to United States of America Recipients provide for reimbursement to "medical providers' of MEDICAID services. These services are for direct benefit of the Recipient of the program[18] under 'medical necessity' and must meet New York State Administrative Guidelines.

**A) Federal guideline for MEDICAID Providers.**

Ms. Atherton states Weil Cornell Hospital and NY Presbyterian White Plains Hospital are 'health care providers' under the MEDICAID - FEDERAL HEALTH CARE INSURANCE. The misdiagnosis of 'paranoid schizophrenic' given to Ms. Atherton, and related 'mental illness' treatment services failed to meet specifications for Federal Funds Reimbursement.[19] *New York Mental Hygiene Law § 32.14 Compliance with operational standards by providers of services in hospitals*[20] Indicates that Weil Cornell Hospital/NY Presbyterian White Plains Hospital provide services for persons with 'mental illness' under accreditation of the Joint Commission, Office of Inspector General for New York State eligible for Federal Health Care Insurance Payment. *New York Social Services Law § 365-a. Character and adequacy of assistance - to TBI patient care ."Benchmark coverage" shall mean payment of part or all of the cost of 'medically necessary' medical, dental, and remedial care, services, and supplies described in subdivision two of this section, and to the extent not included therein, any essential benefits as defined in 42 U.S. C. 18022(b)..."*

**B)  New York Law definition of 'medical necessity'.**
New York Law 'medical necessity' requires "acute suffering", "life endangerment, or 'result in an interference with capacity for normal activity. Ms. Atherton DID NOT suffer from a 'mental illness'. Ms. Atherton's life was not endangered. Ms. Atherton was not in acute suffering - she was 'crying on the street', while sitting on the planter box bench. Thus, for St. Joseph Hospital/NY Presbyterian White Plains Hospital action to remove Ms. Atherton from the duties of her life and 'forcibly commit' her to a Mental Hospital for treatment is NOT MEDICAL NECESSITY. *New York Social Services Law § 365-a. Character and adequacy of assistance.*[21] New York law defines "medically necessary medical, dental, and remedial care, services, and supplies". According to the MEDICAID program as those *"necessary to prevent, diagnose, correct, or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with such person's capacity for normal activity, or threaten some significant handicap and which are furnished an eligible person in accordance with state law." N.Y. Soc. Serv. Law, § 365-a.--* Officials in the state's MEDICAID agency report that this definition applies to both the fee-for-service and managed care populations.

**C)  'Medical Necessity' By National Academy of State Health Policy: December 18th, 2013**
"In general, states must ensure the provision of, and pay for, any services, including treatment, in accordance with mandatory and optional benefits identified in section *1905(a) of the Social Security Act*, determined to be "medically necessary" ... The determination of whether a service is medically necessary must be made on a case-by-case basis, taking into account the particular needs of the patient -- The psychiatric inpatient services are under 3 classifications: *1) Over age 65 and under a long term 'mental illness', 2) under age 22 and developmentally disabled, 3) over age 22 and developmentally disabled. The criteria for an adult under the Social Security Act 1905(a) is that the mental illness treatment is necessary in that setting and expected to come to a termination."*

**D)  Conflict of Interest. Weil Cornell Hospital and NY Presbyterian White Plains Hospital.**          It          is
Ms. Atherton's position that  Weill Cornell Hospital has a financial interest in NY Presbyterian White Plains Hospital since they are related to the same parent company.  Therefore, referring patients for 'mental illness' from Weil Cornell Hospital to St. Vincent's who ARE NOT 'Mentally Ill' is a prohibited practice.  *2015 New York Laws SOS - Social Services Article 5 - ASSISTANCE AND CARE Title 11 - (363 - 369) MEDICAL ASSISTANCE FOR NEEDY PERSONS 366-D - Medical assistance provider; prohibited practices.*[22] NY Presbyterian White Plains Hospital eliminated Ms. Atherton's position in the New York City community, where she was seeking Traumatic Brain Injury care. Ms. Atherton states that Weil Cornell Hospital/NY Presbyterian White Plains Hospital has overstepped its authority to render 'mental health' services failing to release Ms. Atherton after an initial evaluation.  Weil Cornell Hospital Hospital Psych ward **accepted** Ms. Atherton under a 'Temporary Detaining Order' - itself a discriminatory action. Weil Cornell Hospital with the influence from Hasting-on-Hudson Police report effectively remove people from the streets for placement in a full time facility. Ms. Atherton's protests were ignored routinely by all staff of Weil Cornell Hospital/NY Presbyterian White Plains Hospital.

**E)**  Attending Physician failed to meet 'medical necessity' criteria for admission to Weill Cornell Hospital/NY Presbyterian White Plains Hospital.

**Atherton 'Liberty' Complaint in New York State**

ATtending Physician labeled Ms. Atherton "Paranoid Schizophrenic" to obtain an 'Acute Hospital in-patient' diagnosis for Mental Health Insurance purposes. Ms. Atherton did not meet any requirement for acute 'long term stay' either medically, physically, or mentally an emotionally. The Attending Physician failed to recognize her as Traumatic Brain Injury Disability and 'let her go' denying her liberty; violating 'discharge duties'. As a MEDICAID recipient Ms. Atherton's duration of treatment was paid by FEDERAL HEALTH CARE INSURANCE. At Weill Cornell Hospital Ms. Atherton had her medical record as 2 'long-term admissions' to SWVMHI for her TBI - under "Brain Injury for the Poor". At SWVMHI it was the same pattern that Ms. Atherton's Traumatic Brain Injury Disability was not recognized by the Psychiatrists resulting in these 'long – term commitments'.

F) **Ms. Atherton is stating that the 'inpatient' treatment by Weill Cornell Hospital/NY Presbyterian White Plains Hospital violates 'medical necessity' under Federal and State guidelines.**
Weill Cornell Hospital/NY Presbyterian White Plains Hospital relying on convention of 'mental illness', ignoring pervasive neurological impairment. This deception to the FEDERAL GOVERNMENT MEDICAID program is grossly out of order. MEDICAID is America's provides quality Medical Care for over 60 million low-income individuals. Hence, the risk for a 'psychiatric institution' to take advantage of an American Citizen on the MEDICAID program is very high. Ms. Atherton was clearly a New Yorker with 'Intellectual Disabilities'. This ignorance of Ms. Atherton's true health condition allowed Weill Cornell Hospital/NY Presbyterian White Plains Hospital to enrich themselves at Ms. Atherton's expense. Presuming Weill Cornell Hospital/NY Presbyterian White Plains Hospital have an 'Attending Physician' signature on the psychiatric evaluation admittance makes them believe they can 'get away' with it. Ms. Atherton states not only was she 'harmed' by the 'false diagnosis', and 'mental health' treatment. **She was involuntarily used to deceive the FEDERAL GOVERNMENT.** *Social Services Law §365-a(2)* "…provides that "medical assistance" shall mean payment of part or all of the cost of 'medically necessary' *... to prevent, diagnose, correct or cure conditions in the person that cause acute suffering, endanger life, result in illness or infirmity, interfere with such person's capacity for normal activity, or threaten some significant handicap..."* In short Weill Cornell Hospital/NY Presbyterian White Plains Hospital did exactly as they pleased, and duped the Federal Government of dollars of over $40,000 in Mental Health treatment that was unnecessary. Taking advantage of FEDERAL HEALTH CARE PROGRAM is clearly MAPLRACTICE.

G) **Weill Cornell Hospital/NY Presbyterian White Plains Hospital Traumatic Brain Injury discrimination.**
Ms. Atherton emphasizes that the Traumatic Brain Injury Disability discrimination suffered by Ms. Atherton Weill Cornell Hospital/NY Presbyterian White Plains Hospital established a 'principle template' for LABELING Ms. Atherton as 'mentally ill'. Ms. Atherton has had repeated incidents that impact the Atherton Personal Injury Lawsuit.

In summary, the above key points prove the diagnosis was Medical Malpractice not just 'opinion', 'error in judgment', 'psychiatric discipline preference'. The lack of "medical necessity' is the KEY ALARM BELL of FEDERAL HEALTH CARE FRAUD that MALPRACTICE has occurred using personnel of the State Providers of Medicaid as ratification against State Laws, Regulations, Statues, and Codes that prevent Ms. Atherton's care for Traumatic Brain Injury (TBI) 'in the community".

XI) **Weill Cornell Hospital/NY Presbyterian White Plains Hospital violated New York Mental Health Bill or Rights, Informed Consent, Right to Refuse Treatment, Capacity to make Mental Health Decisions.**

A) Informed Consent
Informed Consent means the ability to give authorization to the psychiatric institution of agreement with the treatment plan. Ms. Atherton met the conditions of "informed consent". Ms. Atherton suffers from a TBI disability not a 'mental illness'. Her two neurological evaluations post - hospitalization 3/2012 Dr. Harrison, and 3/2015 Dr. Joseph Conley confirm NO "mental Illness present'. Informed consent is determined by the evaluation of the patient's mental condition that allows for understanding of mental health treatment decisions. Mental Hygiene Definitions Informed Consent *-means agreeing to the procedure after being given full and*

*comprehensive information on potential benefits and harm* 'Medication over Objection' through the Westchester County Mental Health Court was harmful to Ms. Atherton's Brain. It is Ms. Atherton's position that such New York Mental Hygiene Law § 9.39 **Emergency (§9.39)** *"reasonable cause to believe that the person has a mental illness for which immediate observation, care and treatment in a hospital is appropriate and which is likely to result in serious harm to him/ herself or others. " NY Mental Hygiene Bill of Rights – Inpatient Rights for Psychiatric Centers; Surgery and Other Treatments Surgery, electroconvulsive therapy (shock treatment), major medical treatment or experimental drugs or procedures are allowed only with appropriate authorization. Unless … a judge determines that you lack the capacity to consent to treatment, such procedures may be performed only with your informed consent.. Electroconvulsive therapy is not regarded as an emergency treatment, and its use cannot be authorized by a psychiatric center director as an emergency procedure.*

## Research

*A patient may participate in research only if it does not conflict with his or her individual treatment plan. Agreeing or refusing to participate in research will not deprive you of any rights, privileges or protection provided in the law.*

B) Right to Refuse Mental Health Treatment

According to the Mental Health Patients Bill of Rights a patient has the RIGHT to REFUSE TREATMENT While this has been longstanding in New York State, it has become a practice in psychiatric hospitals that when a patient is 'uncooperative' and refuse treatment - they are FORCED to the COURTROOM to impose treatment they had originally rejected. This makes the RIGHT TO REFUSE TREATMENT a Moot issue - devoid of any value. " *NY Mental Hygiene Bill of Rights – Inpatient Rights for Psychiatric Centers; You have the right to refuse to participate in any treatment that is not an integral part of your treatment plan.*

Attending Physician concocted the 3-drug list to initiate use of pharmaceuticals to sedate Ms. Atherton. Refusal of treatment does not mean Ms. Atherton is incapable of "informed consent". (*Rivers v Katz, NY Appeals,1986)*

C) Capacity to make Mental Health Decisions

*NY Public Health Law §2980 Definition. "Capacity to make mental health care decisions" means the ability to understand and appreciate the nature and consequences of health care decisions, including the benefits and risks of and alternatives to any proposed health care, and to reach an informed decision.'* Admittance to a 'mental health' hospital has no bearing on legal capacity. Ms. Atherton has always retained legal competency. **"Legal capacity** is what a human being can do within the framework of the legal system. It is a construct which has no objective reality but is a relation every legal system creates between its subjects and itself. **Legal capacity** gives the right to access the civil and juridical system and the legal independence to speak on one's authority." (www.un.org/esa/socdev/enable/rights/ahc8docs/ahc8idc1218ex.doc) *New York Mental Hygiene Law § 80.11* "The determination by a panel that a patient is in need of surrogate decision-making under this article shall not be construed or deemed to be a